842 A.2d 276 (2004)
367 N.J. Super. 178
Karen BRESOCNIK, Plaintiff-Respondent,
v.
Alexander GALLEGOS, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Argued February 10, 2004.
Decided February 25, 2004.
*277 Michael P. Berkley argued the cause for appellant.
Mark Goldstein, East Brunswick, argued the cause for respondent (Goldstein and Bachman, attorneys; Scott N. Rubin and Mr. Goldstein, on the brief).
Before Judges PRESSLER,[1] CIANCIA and ALLEY.
The decision of the court was delivered by CIANCIA, J.A.D.
This is a domestic violence case. Defendant Alexander Gallegos appeals a final restraining order entered against him and in favor of his former wife, Karen Bresocnik. The trial court found defendant had harassed his wife by communicating with her in violation of N.J.S.A. 2C:33-4(a). We now reverse.
The parties dated for approximately six years before being married in Idaho in May 2002. For reasons not entirely clear from the record, the marriage was annulled in a matter of days. Defendant, a Captain in the United States Army and apparently a career officer, returned to Fort Bragg, North Carolina. Plaintiff, an elementary school teacher, came to New Jersey to work and live. Defendant attempted to communicate with plaintiff by sending letters to plaintiff's godmother who also lived in New Jersey. Plaintiff apparently never read those letters and their content is not part of the trial record. Defendant also sent e-mails to plaintiff but, again, copies of those e-mails, or even descriptions of their content, are not part of the record. Plaintiff did recall that in one letter or e-mail defendant referenced the recent spousal slayings that had occurred at Fort Bragg and said that because of those he appreciated her a lot more.
The event that precipitated plaintiff's application for a domestic violence restraining order occurred on January 6, *278 2003. On that date, a letter from defendant to plaintiff was hand-delivered to plaintiff at her school by an "investigator" hired by defendant. Plaintiff did not have a copy of the letter with her in court and did not describe its content. The content was apparently irrelevant. It was the manner of delivery that assertedly caused plaintiff to fear for her safety and the safety of her young students. Exactly why plaintiff felt threatened is hard to discern. She was upset that she was led to believe that she was signing for a legal document when, in fact, it was a letter from defendant. Plaintiff also testified she was upset because on one occasion, apparently when she and defendant were dating, defendant allegedly said that he had contacts and could have somebody watched.
Essentially on these proofs the trial court found defendant had violated N.J.S.A. 2C:33-4(a), which provides:
Except as provided in subsection e., a person commits a petty disorderly persons offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
....
In State v. Hoffman, 149 N.J. 564, 576, 695 A.2d 236 (1997), our Supreme Court set forth the elements of N.J.S.A. 2C:33-4(a):
A violation of subsection (a) requires the following elements: (1) defendant made or caused to be made a communication; (2) defendant's purpose in making or causing the communication to be made was to harass another person; and (3) the communication was in one of the specified manners or any other manner similarly likely to cause annoyance or alarm to its intended recipient.
Here, the trial court was apparently aware of the relevant law, but made no specific finding that the purpose of defendant's conduct was to harass the plaintiff. In our view, no such finding was available on the facts. Nor does this record support a finding that defendant's conduct was reasonably likely to cause "annoyance or alarm" as those terms are used in N.J.S.A. 2C:33-4(a). In Hoffman, the Court found that two mailings of an envelope each containing a torn support order, a financial statement, and a motion to modify support, that were not sent anonymously and did not contain coarse language, did not constitute harassment. Hoffman, supra, 149 N.J. at 583, 695 A.2d 236. The recipient's legitimate expectation of privacy was not violated. Id. at 584, 695 A.2d 236.
The present case is an unfortunate example of the trivialization of the Prevention of Domestic Violence Act (Domestic Violence Act). N.J.S.A. 2C:25-17 to -35. That law is not designed to interdict all forms of unpleasant exchanges between parties. The law has serious consequences to the personal and professional lives of those who are found guilty of what the Legislature has characterized as "a serious crime against society." N.J.S.A. 2C:25-18. Although the finding of domestic violence is essentially a civil determination, an accused is subject to arrest, N.J.S.A. 2C:25-21b, and is subject to fingerprinting once a final restraining order is entered, N.J.S.A. 53:1-15. A violation of a restraining order is a crime of contempt. N.J.S.A. 2C:25-30; N.J.S.A. 2C:29-9. The order itself can impose wide-reaching sanctions on the defendant. N.J.S.A. 2C:25-29b. A central registry of persons against whom domestic violence restraining orders have been entered is maintained by the Administrative Office of the Courts. N.J.S.A. 2C:25-34.
The purposes of the Domestic Violence Act are laudable. The legislative findings *279 and declaration set out in N.J.S.A. 2C:25-18 address a serious problem too long overlooked in our society. See, e.g., Cesare v. Cesare, 154 N.J. 394, 397-400, 713 A.2d 390 (1998). The law, however, is not a primer for social etiquette and should not be used as a sword to wield against every unpleasant encounter or annoying interaction that occurs between household members, spouses, parents, or those who have had "a dating relationship." N.J.S.A. 2C:25-19d.
In the present case, the parties dated for six years with no indication of any hostility or violence. After the marriage was annulled, defendant returned to his base at Fort Bragg, North Carolina, and had no actual contact with the plaintiff. He attempted to communicate by sending letters, but those letters apparently never reached plaintiff. Similarly, e-mails sent by defendant are without content or description in the present record. The letter that was hand-delivered to plaintiff at the school where she was teaching was not brought to court by plaintiff, but it was introduced into evidence by defendant. It is legally innocuous. It is neither threatening nor irrational. It is an expression of love and regret by someone who has experienced the emotions of a six-year courtship, followed by a marriage that was immediately annulled. Analogously, we stated in Sweeney v. Honachefsky, 313 N.J.Super. 443, 447-448, 712 A.2d 1274 (App.Div.1998):
We think it plain that all of these factors weigh in defendant's favor. We consider them in the light of our perception that the conduct here involved was, in terms of domestic violence, marginal at best. There was never the slightest suggestion of physical or verbal abuse, defendant never made any threats of any kind to plaintiff or her roommate, and he did not use offensive language. This was a brief dating relationship, which plaintiff broke off and defendant hoped to revive during the course of exactly one week by telephone calls and visits in which plaintiff participated. Perhaps it would have been wiser for him not to have tried to effect a rapprochement with plaintiff, but although his continued attentions may have been unwelcome, it is difficult to fit them comfortably into the rubric of domestic violence, which, when harassment is the gravamen, requires a purpose to achieve that result or a course of alarming conduct. See, e.g., N.B. v. T.B., 297 N.J.Super. 35, 41-42, 687 A.2d 766 (App.Div. 1997); Corrente v. Corrente, 281 N.J.Super. 243, 657 A.2d 440 (App.Div.1995); Peranio v. Peranio, 280 N.J.Super. 47, 654 A.2d 495 (App.Div.1995); Murray v. Murray, 267 N.J.Super. 406, 631 A.2d 984 (App.Div.1993). Cf. Cesare v. Cesare, 154 N.J. 394, 713 A.2d 390 (1998); State v. Hoffman, 149 N.J. 564, 695 A.2d 236 (1997). Surely the law must have some tolerance for a disappointed suitor trying to repair a romantic relationship when his conduct is not violent or abusive or threatening but merely importuning.
Plaintiff said she felt threatened for herself and her students. We are hard-pressed to find a rational basis for that fear. Plaintiff obviously does not want any further contact with defendant and may be annoyed at his ability to locate her, but that does not constitute harassment. As the Court noted in Hoffman, supra, many protected forms of speech are annoying but not violative of the harassment statute. 149 N.J. at 583-584, 695 A.2d 236. In our view, a single hand-delivered letter to a work place does not illegally invade privacy and, on these facts, is not reasonably likely to cause "annoyance or alarm" within the meaning of N.J.S.A. 2C:33-4(a). There was no history of threats, abuse, or violence between the parties. Cesare, supra, 154 N.J. at 402, 713 A.2d 390. "The domestic violence law *280 was intended to address matters of consequence...." Corrente v. Corrente, 281 N.J.Super. 243, 250, 657 A.2d 440 (App. Div.1995). Application of the Domestic Violence Act to defendant's conduct in the present case "diminishes the suffering of true victims of domestic violence and misuse[s] the legislative vehicle which was developed to protect them." Peranio v. Peranio, 280 N.J.Super. 47, 56, 654 A.2d 495 (App.Div.1995). Although domestic violence may consist of one egregious act, Cesare, supra, 154 N.J. at 402, 713 A.2d 390, the "reality" is that domestic violence "is ordinarily more than an isolated aberrant act and [the law] incorporates the legislative intent to provide a vehicle to protect victims whose safety is threatened." Peranio, supra, 280 N.J.Super. at 54, 654 A.2d 495.
Here, the trial judge made no specific finding of a purpose to harass and the facts provide no support for such a conclusion. Such a finding is integral to a finding of harassment. E.K. v. G.K., 241 N.J.Super. 567, 570, 575 A.2d 883 (App. Div.1990). Plaintiff's reaction to defendant's efforts at communication does not supply a basis to infer that his purpose was to harass her. On the contrary, his apparent purpose was to express regret and his continuing affection for plaintiff. The personal delivery to her school was to insure her receipt of the letter, not to harass her at her place of employment.
Because we are satisfied there was no credible evidence sufficient to sustain a finding of harassment, we need not address defendant's additional contentions directed at the restraining order's prohibition against his possession of firearms. Suffice it to say that nothing in this record supports such a prohibition, much less against a career soldier. See also L. 2003, c. 277, effective January 14, 2004, amending N.J.S.A. 2C:25-28j, N.J.S.A. 2C:25-29b, and N.J.S.A. 2C:39-7b(3), to exempt on-duty military service members from firearm prohibitions.
For the reasons stated, the domestic violence final restraining order issued against defendant on June 30, 2003 is reversed.
NOTES
[1] Judge Pressler did not participate in oral argument. However, the parties have consented to her participation in the decision.