**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. <u>R.</u> 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1311-19

F.A.,

    Plaintiff-Respondent,

v.

G.D.P.,

    Defendant-Appellant.

_____

Submitted April 12, 2021 – Decided August 11, 2021

Before Judges Messano and Hoffman.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Bergen County, Docket No. FV-02-0473-20.

G.D.P., appellant pro se.

F.A., respondent pro se.

PER CURIAM

Defendant G.D.P.[1] appeals from a final restraining order (FRO) against him and in favor of plaintiff F.A., entered on October 16, 2019, under the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. The trial judge found defendant unjustifiably summoned police to plaintiff's home on eleven occasions in a three-month period, and the FRO was necessary to prevent defendant's further harassment of plaintiff. However, substantial evidence in the record shows defendant actually summoned police to plaintiff's home five times during this period. The trial judge's mistake as to the number of times defendant called police was a significant factual error that may have impacted his decision to issue the FRO. We therefore vacate the FRO, reinstate the temporary restraining order (TRO), and remand the case for further proceedings.

## I.

The parties married in June 2007. They have two children together. Plaintiff filed for divorce in November 2017. According to plaintiff, she filed for divorce to escape defendant's escalating verbal, mental, and physical abuse. On September 4, 2018, while the divorce action remained pending, plaintiff

---

[1] We use initials to protect the identity of victims of alleged domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d) (10).

obtained a TRO based on her complaint that alleged defendant had been harassing her since their separation. However, on September 13, 2018, plaintiff agreed to dismiss the TRO as part of a consent order entered in the parties' divorce proceeding; in that order, the parties agreed to restraints and limitations on contact between them. Specifically, they agreed to "have only non[-]harassing communication via Our Family Wizard" (OFW) software unless an emergency involving the children warranted a call, and "that neither shall go to or pass by the home of the other absent further order from the court."[2] Their divorce was finalized in December 2018.

On September 5, 2019, plaintiff again obtained a TRO against defendant based on a new complaint alleging harassment, stalking, and cyber harassment.[3] Relevant to this appeal, the complaint alleged that on September 4, 2019, defendant called the police on plaintiff "to do a welfare check because he wanted the police to remove the kids so he could take them" and that "in the past [three]

---

[2] In addition, an August 1, 2018 consent order setting forth the parties' "50/50 residential custody" arrangement, provided that "[n]either party will prohibit the other from being able to communicate with the children when they are with the other parent" and "[t]he parties shall exert every reasonable effort to maintain free access and unhampered contact between the children and the other parent."

[3] At the conclusion of the FRO hearing, the trial judge determined plaintiff failed to establish defendant engaged in stalking or cyber harassment and dismissed those counts of her complaint.

A-1311-19

months, def[endant] has called the police and sent them to pla[intiff]'s house six times as a means to intimidate pla[intiff] and her children."

The trial judge heard testimony and arguments on plaintiff's domestic violence complaint on September 12, and October 16, 2019. At the hearing, plaintiff testified that defendant sent the police to her home five times during plaintiff's parenting time to perform unjustified wellness checks on their children, on June 21, 25, 26, and 27, and September 4, 2019. According to plaintiff, defendant "calls the police when it's during my parenting time, but if the kids don't pick up the phone, in [fifteen] minutes he calls the police. It's the way he operates. It's his modus operandi." She asserted that defendant's purpose in calling the police was "to intimidate me like before and for him to intimidate the children" and that "[h]is whole intent always is to find out where I'm at."

Plaintiff also indicated that when police responded to her home, the children were never "found to be in a situation which was unsafe" and "all of those wellness checks turned out . . . to be nothing[.]" The police reports from these five incidents likewise provide that each time police responded to plaintiff's home, the children were found to be "safe" and "in good health" or elsewhere with plaintiff.

Defendant testified at the hearing and explained why he called the police on plaintiff four times in June:

> I generally speak to the children every day and when I don't speak to the children, I then text them and then on those dates in question I did not speak to the children and they did not respond to my texts. I then proceeded to send an email on [OFW] asking to speak to the kids and when I get no response, that's when I call the police. I only do that after the emails are sent.

He further testified, "The purpose of calling the police was to find out where the children were. I only call the police after I send an email and I've called the children. When I don't hear from anyone, I do get nervous and I call the police."

Regarding the fifth call to police on September 4, 2019, defendant testified that he called police on plaintiff to facilitate a custody exchange after plaintiff failed to meet him at the specified time and location with their children. Defendant explained the parenting coordinator informed the parties on the morning of September 4 that defendant was entitled to obtain custody that day. Defendant told plaintiff to meet him at 6 p.m. to facilitate the custody exchange, but after waiting from "[a] little before 6:15" p.m. to "about 6:40" p.m. without hearing anything from plaintiff, defendant called the police and requested they meet him at plaintiff's house. The police and defendant did arrive at plaintiff's house, but after the police spoke with plaintiff, no custody exchange occurred.

5

At the FRO hearing, defendant explained his reason for calling the police: "I did not want the police to go alone because I was afraid if there was going to be an exchange, I did not want [the children] to go in a police car. I would rather just get them." The police report of this incident provides defendant "stated that he contacted the police to eliminate any conflict" in picking up his children.

An OFW message exchange between the parties, contained within the record, reveals that on the morning of September 4, 2019, defendant and plaintiff disagreed over when they would exchange custody of their children, due to school beginning that week. Defendant contacted the parenting coordinator who, via email, informed the parties that defendant was entitled to gain custody of the children that day. During the hearing, plaintiff claimed that she saw the OFW message from defendant instructing her to review the parenting coordinator's email but that she did not actually see the parenting coordinator's email until after the police arrived at her home.

Following the hearing, the trial judge issued an FRO in favor of plaintiff against defendant. Rendering an oral decision on the record in support of the FRO, the judge found defendant lacked a legitimate basis for calling the police on plaintiff, and he did so only to harass her. Moreover, the judge found the FRO was necessary because it was "the only way this stuff is going to stop."

6

Defendant now appeals the October 16, 2019 FRO entered against him. He raises the following arguments for our consideration:

POINT 1

THE COURT MADE A FACTUAL ERROR IN THE AMOUNT OF TIMES THE POLICE WERE CALLED.

POINT 2

THE COURT MADE A FACTUAL ERROR ABOUT THE POLICE BEING CALLED WITHOUT FIRST CONTACTING THE PLAINTIFF.

POINT 3

THERE WAS NO PREDICATE ACT OF HARASSMENT ON SEPTEMBER 4, 2019.

POINT 4

THE PLAINTIFF DID NOT OFFER EVIDENCE OF PHYSICAL ABUSE AND THE COURT PROMPTED HER TO DO SO BY LEADING QUESTIONS.

II.

We accord "great deference to discretionary decisions of Family Part judges[,]" Milne v. Goldenberg, 428 N.J. Super. 184, 197 (App. Div. 2012), in recognition of the "family courts' special jurisdiction and expertise in family

matters . . . ." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 343 (2010) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). "[F]indings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). "Deference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)). Accordingly, "an appellate court should not disturb the 'factual findings and legal conclusions of the trial judge unless [it is] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice.'" Ibid. (alteration in original) (quoting Rova Farms Resort, Inc., 65 N.J. at 484). However, "[a] trial court's interpretation of the law and the legal consequences that flow from established facts are not entitled to any special deference." Manalapan Realty, L.P. v. Twp. Comm. of Manalapan, 140 N.J. 366, 378 (1995).

When determining whether to grant an FRO under the Act, the trial court must engage in a two-step analysis. Silver v. Silver, 387 N.J. Super. 112, 125-26 (App. Div. 2006). The trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the

predicate acts set forth in [N.J.S.A. 2C:25-19(a)] has occurred." Ibid. This determination is made "in light of the previous history of violence between the parties." Ibid. (quoting Cesare, 154 N.J. at 402).

Second, the court must determine that a restraining order is necessary to provide protection for the victim. Id. at 126-27; see also J.D., 207 N.J. at 476 (explaining that an FRO should not be issued without a finding that "relief [is] necessary to prevent further abuse" (quoting N.J.S.A. 2C:25-29(b))). As part of that second step, the court must assess "whether a restraining order is necessary, upon an evaluation of the fact[or]s set forth at N.J.S.A. 2C:25-29(a), to protect the victim from an immediate danger or to prevent further abuse." J.D., 207 N.J. at 475-76 (quoting Silver, 387 N.J. Super. at 127). The second Silver prong thus "ensure[s] that the protective purposes of the Act are served, while limiting the possibility that the Act, or the courts, will become inappropriate weapons in domestic warfare." Id. at 488.

Harassment, prohibited by N.J.S.A. 2C:33-4, constitutes a predicate act of domestic violence. N.J.S.A. 2C:25-19(a)(13); J.D., 207 N.J. at 475. A person commits the predicate act of harassment

> if, with purpose to harass another, he:
>
> > a. Makes, or causes to be made, a communication or communications anonymously or at extremely

inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;

b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or

c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.

[N.J.S.A. 2C:33-4.]

A violation of N.J.S.A. 2C:33-4(c) (subsection c) requires proof of a course of conduct. J.D., 207 N.J. at 478. That may consist of conduct that is alarming, or it may be a series of repeated acts if done with the purpose "to alarm or seriously annoy" the intended victim. Ibid. Our Supreme Court has explained that this "phrase means 'to weary, worry, trouble or offend.'" J.D., 207 N.J. at 478 (quoting State v. Hoffman, 149 N.J. 564, 581 (1997)).

In evaluating a defendant's purpose, a judge is entitled to use "[c]ommon sense and experience." State v. Hoffman, 149 N.J. 564, 577 (1997). Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006).

Here, the trial judge found defendant engaged in the predicate act of harassment, as prohibited by subsection (c), and that the FRO was necessary to stop defendant's further harassment. Specifically, the judge found that during plaintiff's parenting time, if defendant called his children and they did not respond, defendant would email plaintiff inquiring about the children's status and whereabouts. If plaintiff failed to "immediately respond to" defendant's emails, defendant would call the police. The judge determined that defendant had "no legitimate reason" for summoning the police, and it seemed defendant was "trying to control" and "interfere with" plaintiff's parenting time "by calling the police." Thus, defendant "continuously mak[ing] telephone calls for wellness checks on the children" constituted subsection (c) harrassment "because these repeatedly committed acts . . . were done for the purpose to seriously annoy [plaintiff] or to alarm her."

The trial judge also determined "that there is a need to enter a restraining order because that's the only way this stuff is going to stop." He explained the FRO was necessary because "a message has to be getting through" to defendant that he "cannot be calling the police every time your children don't answer the phone. It's not fair."

A-1311-19

However, as defendant highlights in his brief, the trial judge appears to have based his decision on his mistaken belief that defendant called the police on plaintiff ten or eleven times during the period of June to September 2019. The evidence in the record shows defendant only called the police five or six times during the relevant period. Plaintiff's complaint accused defendant of calling the police six times, and at the restraining order hearing, plaintiff testified that defendant only called the police five times. Defendant testified that he called the police "five or six times"; the context of this testimony indicated these were the same calls about which plaintiff testified. Furthermore, only five police reports are included in the record: four from June 2019 and one from September 4, 2019.

The trial judge's factual error about the number of times defendant called the police pervaded his discussion and analysis of both <u>Silver</u> prongs. While discussing whether defendant's conduct amounted to a predicate act of harassment, the judge stated defendant called the police "on at least five occasions . . . noted by plaintiff and another five occasions beyond that beginning in June of 2019." He continued:

> The communications that are being made is that substantively harassment, having the police show up for no legitimate reason is that harassing? <u>I think it is. I'm satisfied that the frequency that this has occurred is</u>

> beyond dispute. I've got eleven occasions over a short period of time. That is a clear abuse. That should not be done with regard to children who don't answer a telephone call. There were instances that were testified and Dad testified there were at least six more other than the ones that were reported, so that was on his cross-examination. . . .
>
> . . . .
>
> Is there a predicate act that's here? . . . . I am satisfied with the fact that there were this number of calls and I have at least some other ones, but on June 21st, 25th, 26th, 27th, and the September 4th those were ones that were testified to and then Dad said there were other occasions when the police were called. I do have the Franklin Lakes Police Department coming and issuing reports in November and December of 2017, but that's kind of old, they're kind of stale. I am satisfied that Mom has demonstrated that there has been a violation of the Prevention of Domestic Violence Act because these repeatedly committed acts I am satisfied that they were done for the purpose to seriously annoy her or to alarm her.
>
> [(emphasis added).]

This mistake likewise permeated the judge's conclusion that the FRO was necessary to protect plaintiff from future acts of domestic violence. The judge relied on "the number of wellness checks to the children over a short period of time" and the "numerous occasions" police went to plaintiff's home to conclude the FRO was necessary to stop defendant from sending the police to plaintiff's home.

13

The judge's statement as to the number of calls to police was essential to and intertwined with his findings that defendant committed the predicate act of harassment and that the FRO was necessary to protect plaintiff. We therefore cannot say the trial judge's findings were supported by adequate, substantial, or credible evidence. Rather, his findings were based, in significant part, on a mistake of fact.

In the absence of sufficient findings by the trial court, an appellate court may canvass the record itself and determine if the proofs were sufficient to warrant a finding defendant's conduct constituted domestic violence within the meaning of the Act. See J.D., 207 N.J. at 488; Bresocnik v. Gallegos, 367 N.J. Super. 178, 180-81, 183 (App. Div. 2004). However, because "our independent review of the record leaves us unsure that there is sufficient evidence to sustain the issuance of the order[,]" J.D., 207 N.J. at 488, we believe the trial judge, on remand, will be better positioned to make this determination.

Unquestionably, five unjustified calls to the police could be sufficient to constitute harassment under N.J.S.A. 2C:33-4(c). See e.g. State v. J.T., 294 N.J. Super. 540, 545 (App. Div. 1996) (affirming a harassment conviction under N.J.S.A. 2C:33-3(c) based on a single incident that constituted a "course of alarming conduct."). However, "whether a particular series of events rises to

the level of harassment or not is fact-sensitive.  The smallest additional fact or the slightest alteration in context" may make the difference between harassing and non-harassing conduct.  <u>J.D.</u>, 207 N.J. at 484.  Indeed, our Supreme Court has emphasized the "weighty responsibility" of courts to distinguish "between acts that constitute harassment for purposes of issuing a domestic violence restraining order and those that fall instead into the category of 'ordinary domestic contretemps' . . . ."  <u>Id.</u> at 475 (quoting <u>Corrente v. Corrente</u>, 281 N.J. Super. 243, 249-50 (App. Div. 1995)).

"Therefore, in an abundance of caution, and mindful of the Family Court's 'special expertise' and the Act's protective purposes," <u>id.</u> at 488, we decline to reach a conclusion as to whether defendant's five calls to police were sufficient to constitute domestic violence within the meaning of the Act or to necessitate a restraining order.  Our primary concern is that the trial judge's determination that to FRO was necessary to stop defendant's ostensibly relentless wellness checks was dependent on his mistaken belief that defendant made twice the number of calls to police than he actually did.  In other words, we are not certain the trial judge would have found the FRO necessary if he realized there were only five calls to police, rather than ten or eleven.  We hesitate to decide the necessity of the FRO especially given that defendant's calls ceased from the end

of June until early September, and the September call, stemmed from defendant's arguably reasonable belief, based on the parenting coordinator's email, that he was entitled to obtain custody that day. Of course, the trial judge could decide defendant forcing plaintiff to endure five police encounters necessitates an FRO all the same. We defer to the discretion of the trial judge to determine if this correction of fact will materially change his decision to issue the FRO.

We thus vacate the FRO, reinstate the TRO, and remand this matter to the trial judge for further proceedings consistent with this opinion. In remanding, we express no view as to what the outcome of the remand should be, only that the trial judge should reassess defendant's conduct and the necessity of an FRO, based on the correct number of times defendant called the police on plaintiff. In light of the amount of time that has passed since the FRO was entered, it may also be desirable for the trial judge to take additional testimony, especially on the second prong, to deduce the parties' current circumstances, before rendering a decision on remand. We leave that to the trial judge's discretion as well.

We also note that on remand, when determining whether an FRO is necessary, the trial court should engage in a more thorough evaluation of the factors set forth at N.J.S.A. 2C:25-29(a) and explicitly discuss the first factor, the parties' "previous history of domestic violence . . . ." N.J.S.A. 2C:25-

16

29(a)(1). Our Supreme Court has emphasized that courts "must at least <u>consider</u> that factor in the course of its analysis." <u>Cesare</u>, 154 N.J. at 402. Here, the trial judge merely acknowledged "the past between these folks, that they have a history between the two of them . . . ." He did not review the details of that history or make specific findings of fact as to whether there were past incidents of domestic violence. Therefore, on remand, the trial judge "should consider and make specific findings on the previous history of domestic violence, if any, between . . . plaintiff and defendant, and how that impacts, if at all, on the issue of whether a restraining order should issue." <u>Silver</u>, 387 N.J. Super. at 128.

Vacated and remanded. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1311-19