# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-1909-20

J.R.R.,

    Plaintiff-Respondent,

v.

A.L.B.,

    Defendant-Appellant.

_____

Submitted December 13, 2021 – Decided March 8, 2022

Before Judges Messano and Enright.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Union County, Docket No. FV-20-0036-21.

Law Office of Matthew B. Lun, attorneys for appellant (Rosella M. Morabito, on the brief).

Respondent has not filed a brief.

PER CURIAM

Defendant A.L.B., mother of plaintiff J.R.R., and grandmother to plaintiff's children, J.R., and A.R. (Adam), appeals the Family Part's July 7,

2020 final restraining order (FRO).[1] The court granted the FRO following a six-day hearing pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. At the hearing, plaintiff, his wife N.R. (Nancy), plaintiff's neighbor, and defendant testified. While the complaint was pending, defendant filed an application for grandparent visitation.

Plaintiff had legal custody of his children at all relevant times. However, following a dispute with his parents, Adam lived with defendant from January until June 19, 2020. During this time, defendant did not allow plaintiff inside the house because plaintiff and defendant's husband L.B. (Luke) had a contentious relationship.

On June 19, plaintiff and Nancy arrived to pick up Adam from defendant's house. Police were called to intervene, and only when they were satisfied that plaintiff and Nancy were the boy's parents was he permitted to return home with them. Shortly thereafter, defendant came to plaintiff's house and asked for pictures of the children. She was there for approximately one hour before leaving. Defendant arrived at plaintiff's house the following day, warning plaintiff and Nancy that Luke had a gun and might try to harm them. Defendant

[1] We use initials and pseudonyms to protect the identity of the victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(9)-(10).

had a key to plaintiff's house, and on three subsequent occasions she went there uninvited to take photographs of the children. Each time, plaintiff or his wife told defendant to leave; defendant testified this never happened. On July 7, defendant sent plaintiff a text message purportedly relaying a message from Luke, saying he was going to refer plaintiff and Nancy to the Division of Child Protection and Permanency (the Division) if he did not get to see his grandchildren. Defendant added, "[t]his is only the beginning."

The Family Part judge determined defendant's actions constituted harassment, N.J.S.A. 2C:33-4(c), a predicate act of domestic violence, and an FRO was necessary for plaintiff's protection. She found plaintiff and Nancy very credible, as opposed to defendant, whom the judge found disingenuous. The judge made the following findings of fact.

Defendant initially prevented plaintiff and Nancy from getting their son back. As soon as Adam returned home, defendant repeatedly came into plaintiff's home to take pictures of Adam despite being told to stop. Further, defendant sent a text message to plaintiff and Nancy reiterating Luke's threat to call the Division and initiate a complaint. Considering the totality of the circumstances, the judge concluded defendant's actions demonstrated a purpose

to harass. After applying the Silver[2] factors, she granted the FRO to protect plaintiff and his family from further harassment.

On appeal, defendant contends her due process rights were violated when the judge allowed plaintiff to testify about incidents not identified in his complaint; plaintiff failed to show defendant's conduct constituted harassment; and the court incorrectly applied Silver.

After carefully reviewing the record, we affirm.

## I.

It is well-settled that appellate courts review "Family Part judge's findings in accordance with a deferential standard of review, recognizing the court's 'special jurisdiction and expertise in family matters.'" Thieme v. Aucoin-Thieme, 227 N.J. 269, 282–83 (2016) (quoting Cesare v. Cesare, 154 N.J. 394, 413 (1998)). Moreover, appellate courts defer to a trial court's factual findings "because it has the opportunity to make first-hand credibility judgments about the witnesses who appear on the stand; it has a feel of the case that can never be realized by a review of the cold record." N.J. Div. of Youth & Fam. Servs. v. M.C. III, 201 N.J. 328, 342–43 (2010) (quoting N.J. Div. of Youth & Fam. Servs. v. E.P., 196 N.J. 88, 104 (2008)). Thus, "findings by a trial court are

---

[2] Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

binding on appeal when supported by adequate, substantial, credible evidence." Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 411–12). However, we review legal conclusions de novo. Thieme, 227 N.J. at 283 (citing D.W. v. R.W., 212 N.J. 232, 245–46 (2012)).

## II.

Due process requires a party receive "notice defining the issues and an adequate opportunity to prepare and respond." H.E.S. v. J.C.S., 175 N.J. 309, 321–22 (2003) (quoting McKeown-Brand v. Trump Castle Hotel & Casino, 132 N.J. 546, 559 (1993)). "There can be no adequate preparation where the notice does not reasonably apprise the party of the charges, or where the issues litigated at the hearing differ substantially from those outlined in the notice." Nicoletta v. N. Jersey Dist. Water Supply Comm'n of N.J., 77 N.J. 145, 162 (1978) (quoting Dep't of Law & Pub. Safety v. Miller, 115 N.J. Super. 122, 126 (App. Div. 1971)).

In H.E.S., the Court addressed the scope of procedural due process protection required in domestic violence proceedings. 175 N.J. at 322. At the FRO hearing, the defendant objected to testimony regarding past acts of domestic violence. Id. at 317. The Court vacated the FRO and found the defendant's due process rights were violated in part by "the trial court's refusal to grant an adjournment after [the] plaintiff alleged an incident of domestic violence not contained in the complaint."

A-1909-20

<u>Id.</u> at 324. Likewise, in <u>J.F. v. B.K.</u>, we reversed a FRO entered against the defendant where the trial court found acts of domestic violence not alleged in the plaintiff's complaint. 308 N.J. Super. 387, 391–92 (App. Div. 1998).

However, in <u>Paziena v. Camarata</u>, we affirmed the finding of a predicate offense of domestic violence despite the plaintiff's failure to provide the defendant with a copy of all allegations against him. 381 N.J. Super. 173, 184–86 (App. Div. 2005). Significant to this determination was the trial court's decision to offer the defendant an opportunity to recess the hearing to review evidence produced by the plaintiff. <u>Id.</u> at 185. Additionally, the trial court based its ultimate findings on events "clearly set forth in the complaint." <u>Id.</u> at 185–86.

Here, the complaint contained two claims, both allegedly occurring on July 5, 2020, specifically, that defendant threatened to call the Division, and defendant entered plaintiff's house and took photos of his children without permission. Although the trial court allowed plaintiff to testify that defendant went to his house on other occasions and took pictures of his children, the court offered to adjourn the hearing multiple times throughout the proceedings to permit defendant to respond. While the judge clarified that two incidents plaintiff referenced in the complaint had different dates, she still offered defense counsel time to prepare. Each time, defendant either declined or opted for only a few minutes continuance to review.

A-1909-20

Further, the trial court based its findings on the two allegations cited in the complaint, despite having heard and considered additional prior acts.

Next, we address defendant's multiple arguments that plaintiff failed to show her conduct constituted harassment. Harassment, N.J.S.A. 2C:33-4, is a predicate act of domestic violence under the Act. See N.J.S.A. 2C:25-19(a)(13). A person is guilty of harassment if,

> with purpose to harass another, he [or she]:
>
> a. Makes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
>
> b. Subjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so; or
>
> c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
>
> [N.J.S.A. 2C:33-4.]

The trial court found defendant committed harassment under subsection (c). Subsection (c) requires the conduct be "seriously annoy[ing]". This means "to weary, worry, trouble, or offend." State v. Hoffman, 149 N.J. 564, 581 (1997).

"'A finding of a purpose to harass may be inferred from the evidence presented' and from common sense and experience." H.E.S., 175 N.J. at 327

7

(quoting Hoffman, 149 N.J. at 577). To determine whether defendant acted with the purpose to harass, a court may look at the "history between the parties." J.D. v. M.D.F., 207 N.J. 458, 487 (2011) (citing Hoffman, 149 N.J. at 577). However, the "finding must be supported by some evidence that the actor's conscious object was to alarm or annoy; mere awareness that someone might be alarmed or annoyed is insufficient." Ibid. (citing State v. Fuchs, 230 N.J. Super. 420, 428 (App. Div. 1989)).

Here, the judge found the totality of the circumstances demonstrated defendant acted with the intent to annoy. The judge did not find defendant's conduct reflected mere disagreements between family members. See, e.g., R.G. v. R.G., 449 N.J. Super. 208, 225 (App. Div. 2017) (noting it necessary to distinguish between "ordinary disputes and disagreements between family members and those acts that cross the line into domestic violence"). We will not disturb this finding, which is based on substantial credible evidence in the record that defendant repeatedly came to plaintiff's house, sat in front of the house, sent plaintiff text messages threatening to make complaints to the Division, and demanded photos of the children for no other reason than to annoy.

Defendant's claim that the judge found harassment based on Luke's conduct also fails because the judge based her findings on defendant's independent actions,

including her decision to forward the threatening text message regarding referral to the Division.

We also reject defendant's claim that her actions did not constitute harassment because N.J.S.A. 9:6-8.10 requires any person who suspects child abuse to report it. There is nothing in the record showing defendant reported anything to the Division, or that she had cause to make such a threat. In fact, defendant specifically testified she was against making any report to the Division. Defendant's claim that her actions could not constitute harassment because she possessed a key to plaintiff's house, and plaintiff kept his door unlocked, are unconvincing. Plaintiff testified that defendant was aware she was no longer welcome in his home.

We now turn to defendant's final argument that the court erred in its application of Silver. In Silver, we set forth a two-part test to determine the need for an FRO. 387 N.J. Super. at 125. "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19a has occurred." Ibid. Next, "upon a finding of the commission of a predicate act of domestic violence," the court must decide "whether [it] should enter a restraining order that provides protection for the victim." Id. at 126. For this step, "the guiding standard is whether a restraining order is necessary, upon an evaluation of the factors set forth in N.J.S.A.

2C:25-29a(1) to -29a(6), to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

The factors are

(1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment and physical abuse;

(2) The existence of immediate danger to person or property;

(3) The financial circumstances of the plaintiff and defendant;

(4) The best interests of the victim and any child;

(5) In determining custody and parenting time the protection of the victim's safety; and

(6) The existence of a verifiable order of protection from another jurisdiction.

[N.J.S.A. 2C:25-29(a).]

The judge concluded plaintiff proved the predicate act of harassment. She then considered factors one, two, and four and determined an FRO was necessary. We will not disturb this finding which was based on credible evidence in the record. The judge relied on defendant's text message threatening to call the Division, defendant going to plaintiff's house warning that Luke had a gun, and defendant "continually harassing and terrifying [plaintiff]." The

judge also found defendant's conduct prior to these hearings did not stop until plaintiff filed his complaint and obtained a TRO.

Defendant further claims plaintiff's motive for obtaining an FRO was to separate defendant from the grandchildren and prevent her from succeeding in her visitation action. Defendant contends that motive is contrary to the purpose of the Act, which is "to assist [individuals] who are truly the victims of domestic violence," and "[i]t should not be trivialized by its misuse in situations which do not involve violence or threats of violence." Silver, 387 N.J. Super. at 124 (quoting Kamen v. Egan, 322 N.J. Super. 222, 229 (App. Div. 1999)). Defendant notes "we have previously expressed our concern that the Act may be misused in order to gain advantage in a companion matrimonial action or custody or visitation action." Kamen, 322 N.J. Super. at 229. However, by defendant's own admission, proceedings under the Act were already pending when she filed an application for grandparent visitation.

Additionally, although the Act "is not designed to interdict all forms of unpleasant exchanges between parties," those cases that found the Act was used as a "sword" cited facts that provided no rational basis for the grant of an FRO. See e.g., Bresocnik v. Gallegos, 367 N.J. Super. 178, 180–83 (App. Div. 2004) (finding a one-time hand-delivered letter to a workplace did not reasonably cause

"annoyance or alarm" within the meaning of N.J.S.A. 2C:33-4(a)).  Here, based on the trial judge's specific findings, there was a rational basis demonstrating the need for restraints.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-1909-20