# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3877-22

N.R.G.,[1]

    Plaintiff-Respondent,

v.

A.R.C.,

    Defendant-Appellant.

_____

Submitted May 22, 2024 – Decided September 27, 2024

Before Judges Gummer and Walcott-Henderson.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-2258-23.

Mario M. Blanch, attorney for appellant.

Ramon M. Gonzalez, attorney for respondent (Ramon M. Gonzalez and Christina A. Vergara, on the brief).

    The opinion of the court was delivered by

---

[1] We use initials in this domestic-violence action pursuant to Rule 1:38-3(d)(10).

GUMMER, J.A.D.

Defendant A.R.C. appeals from a final restraining order (FRO), which was issued after a bench trial and entered pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. Defendant argues the trial court erred in finding statements defendant had made to plaintiff constituted harassment and that an FRO was necessary for plaintiff's protection. We disagree and affirm.

I.

The scope of our review is limited in an appeal involving an FRO issued after a bench trial. C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020). "We accord substantial deference to Family Part judges, who routinely hear domestic violence cases and are 'specially trained to detect the difference between domestic violence and more ordinary differences that arise between couples.'" Ibid. (quoting J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). "[D]eference is especially appropriate 'when the evidence is largely testimonial and involves questions of credibility.'" MacKinnon v. MacKinnon, 191 N.J. 240, 254 (2007) (quoting Cesare v. Cesare, 154 N.J. 394, 412 (1998)). "[T]he trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court in evaluating the

veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412).

"The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Cesare, 154 N.J. at 411-12; Gnall, 222 N.J. at 428. We defer to a trial judge's factual findings unless they are "so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)); see also C.C., 463 N.J. Super. at 428. We defer to a trial judge's credibility determinations. Gnall, 222 N.J. at 428. We review de novo a trial judge's legal conclusions. C.C., 463 N.J. Super. at 429.

The entry of an FRO under the PDVA requires the trial court to make certain findings pursuant to a two-pronged analysis set forth in Silver v. Silver, 387 N.J. Super. 112, 125-27 (App. Div. 2006). Initially, the court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19(a) has occurred." Id. at 125 (citing N.J.S.A. 2C:25-29(a)). Harassment is among the predicate acts included in N.J.S.A. 2C:25-19(a). N.J.S.A. 2C:25-19(a)(13).

3

A person commits harassment, "if, with purpose to harass another," he or she: (a) "[m]akes, or causes to be made, one or more communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm"; (b) "[s]ubjects another to striking, kicking, shoving, or other offensive touching, or threatens to do so"; or (c) "[e]ngages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person." N.J.S.A. 2C:33-4(a) to (c). "The purpose to be served by enactment of the harassment statute [was] to make criminal, private annoyances that are not entitled to constitutional protection." State v. Hoffman, 149 N.J. 564, 576 (1997). "[C]ommunications only ha[ve] to 'cause annoyance or alarm' to qualify as harassment." State v. Higginbotham, 257 N.J. 260, 287 (2024) (quoting N.J.S.A. 2C:33-4(a)). "A finding of a purpose to harass may be inferred from the evidence presented." Hoffman, 149 N.J. at 577. "Common sense and experience may inform that determination." Ibid.

As to the second prong of the analysis, the judge must determine whether a restraining order is necessary to protect the plaintiff from immediate harm or further acts of violence. Silver, 387 N.J. Super. at 127; see also D.M.R. v.

A-3877-22

M.K.G., 467 N.J. Super. 308, 322 (App. Div. 2021) (finding "the judge must determine whether a restraining order is necessary to protect the plaintiff from future danger or threats of violence"). That determination must be made based on a totality-of-the-circumstances analysis. See C.C., 463 N.J. Super. at 436 (explaining "the credible evidence in the record support[ed] the [trial] judge's decision that the FRO was necessary to protect plaintiff from immediate danger or future abuse" where "plaintiff's testimony established the totality of defendant's conduct placed her in fear"); see also N.J.S.A. 2C:25-29(b) (stating "the court shall grant any relief necessary to prevent further abuse").

## II.

In support of his appeal, defendant submitted only the transcript of the July 27, 2023 proceedings, during which counsel gave their closing arguments and the court rendered its decision. See R. 2:5-1(a)(2) (requiring submission of transcript request form)[2]; R. 2:5-3 (regarding requirements for preparation and filing of transcript and transcript-completion certification). Defendant did not submit the transcript of the proceedings that took place on the first day of the trial, during which plaintiff presented her case-in-chief, her testimony, and the

---

[2] According to the transcript request form submitted by defendant, defendant requested a transcript only of the July 27, 2023 trial proceedings and not of the proceedings of the first day of the trial.

A-3877-22

testimony of her niece, who had witnessed the events at issue. Defendant's counsel submitted a certification regarding his office's unsuccessful efforts to obtain the transcript of that day's proceedings. He stated the "transcriber" and court staff had advised that "no such transcript existed," but he did not include any written confirmation from a court reporter or court staff. Plaintiff urges us to dismiss the appeal as procedurally defective given the failure to provide the transcript of the proceedings of the first day of the trial. But because defendant incorporates in his merits brief the trial judge's factual findings and does not dispute those factual conclusions but only the legal conclusions drawn from them, we now consider the substance of defendant's appeal.

The trial judge made the following factual findings. The parties dated for a substantial period of time. They met in Cuba when plaintiff was a teenager and again in 2007. The parties moved to New Jersey and lived together. According to plaintiff, problems began between the parties in 2018. By March 3, 2023, the parties had made efforts not to be at their shared residence at the same time. On March 5, 2023, at approximately 8 p.m., defendant entered the home while plaintiff was there with her niece.

Plaintiff described defendant as entering the home "like a beast" and testified that defendant had "[co]me in through the kitchen, slammed his hand

or fist on the kitchen counter," and told plaintiff that she did not "respect men and deserved to have her jaw broken." Defendant then went to the basement, apparently to confront a person named Perez, who was the husband of plaintiff's niece. Defendant's son joined defendant, "and they started hitting Mr. Perez." The police were called to the residence.

The next day plaintiff filed a domestic-violence complaint, alleging harassment as the predicate act, and was granted a temporary restraining order. On April 5, 2023, plaintiff amended the TRO to include further details of the March 5, 2023 incident and prior acts of domestic violence. She apparently did not testify about those prior acts at the trial.

At the conclusion of the trial, the judge placed his decision on the record granting plaintiff's FRO application and issued the FRO. The judge found that defendant's statements to plaintiff when he entered the kitchen – that she didn't respect men and deserved to have her jaw broken – constituted harassment under paragraph (a) of the harassment statute as a communication "likely to cause annoyance or alarm" and under paragraph (b) of the statute as a communication threatening to strike plaintiff or engage in other offensive acts. N.J.S.A. 2C:33-4(a), (b). The judge also found those statements could not have been made for any purpose "other than to harass [plaintiff]."

7

As for the second prong under <u>Silver</u>, the judge acknowledged plaintiff's testimony seemed to suggest her longstanding relationship with defendant had ended. However, defendant knew where plaintiff lived and worked and his son lived next door to her. The judge found plaintiff needed an FRO for her protection.

On appeal, defendant asserts his statements to plaintiff did not constitute harassment because they weren't an actual threat to plaintiff but instead represented defendant "venting." We recognize the PDVA "is not designed to interdict all forms of unpleasant exchanges between parties," <u>R.G. v. R.G.</u>, 449 N.J. Super. 208, 227 (App. Div. 2017) (quoting <u>Bresocnik v. Gallegos</u>, 367 N.J. Super. 178, 181 (App. Div. 2004)), and that "[a] mere expression of anger between persons in a requisite relationship is not an act of harassment," <u>ibid.</u> But under the circumstances of this case – defendant, acting "like a beast," had "slammed his hand or fist on the kitchen counter" and told plaintiff that she did not "respect men and deserved to have her jaw broken" – we perceive no basis to overturn the trial judge's determination that defendant's words constituted a threat of physical violence likely to cause annoyance or alarm and were made with no other purpose other than to harass.

A-3877-22

Defendant also challenges the trial court's determination that an FRO was necessary to protect plaintiff, faulting the court for not specifically addressing each of the factors identified in N.J.S.A. 2C:25-29(a). In her closing argument, defense counsel acknowledged plaintiff had testified she was afraid of defendant but argued that testimony was "incredible." The trial judge clearly found plaintiff credible, and we have no reason to find otherwise. The better course would have been for the judge to address each of the factors of N.J.S.A. 2C:25-29(a). But the evidence nevertheless supported the finding that an FRO was necessary to protect plaintiff "from future danger or threats of violence," D.M.R., 467 N.J. Super. at 322, given the threat defendant already had made, that he knew where she lived and worked, and the likelihood of future contact.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

9

A-3877-22