# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2377-20

V.R.J.,

    Plaintiff-Respondent,

v.

K.R.J.,

    Defendant-Appellant.

_____

Submitted September 20, 2022 – Decided September 27, 2022

Before Judges Geiger and Susswein.

On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Hudson County, Docket No. FV-09-1145-21.

K.R.J., appellant pro se.

Respondent has not filed a brief.

PER CURIAM

Defendant K.R.J.[1] appeals from a final restraining order (FRO) entered in favor of plaintiff V.R.J., pursuant to the Prevention of Domestic Violence Act (the Act), N.J.S.A. 2C:25-17 to -35. We affirm.

We take the following facts from the record. Plaintiff is defendant's aunt. Plaintiff and defendant lived together in plaintiff's house in Jersey City.

In November 2019, plaintiff and defendant got into an argument. Defendant then threw plaintiff down and started punching her. Defendant also threatened to kill plaintiff four times if she did not move out in 30 days.

In May 2020, defendant struck the outside of plaintiff's bedroom door with a stick causing a large hole in the door. On another occasion in 2020, defendant started an argument with plaintiff and threatened to "kick [her] ass." In November 2020, defendant stuck his finger in plaintiff's face and threatened to "kick [her] ass and kill [her]." Also, on or about December 1, 2020, defendant threatened to "slap the shit out of" plaintiff and that "there is nothing nobody can do to stop him" because it was only plaintiff and defendant living together.

Plaintiff had a rule in her house that the lights were to be turned off at 1:00 a.m. because of the electric bill. In the Summer of 2020, at about 2:00 a.m.,

---

[1] We refer to the parties by initials to protect the victim's identity. R. 1:38-3(d)(10).

plaintiff told defendant the rule and he threatened her that if she turned off the lights "he'd kick [her] ass." Plaintiff testified that defendant also threatened to "kick [her] ass" on another occasion.

Plaintiff further testified that defendant would walk around with his cell phone in her face and would take pictures of them and post them on Facebook.

On December 4, 2020,[2] at 1:30 a.m., defendant started flashing a flashlight in plaintiff's face. An argument broke out and then defendant punched plaintiff in the face. After this, the parties began to wrestle. That same day, plaintiff applied for and was granted a temporary restraining order (TRO) against defendant.[3] On December 15, 2020, an amended TRO was entered against defendant that specified predicate acts of terroristic threats, N.J.S.A. 2C:12-3; and harassment, N.J.S.A. 2C:33-4.

The trial court conducted a two-day final hearing. Plaintiff testified that she felt there was a need for the final restraining order because she did not feel safe in the house with defendant, and even after the temporary restraining order she still feared defendant.

---

[2] Plaintiff testified that this incident occurred on December 5, 2020, but the TRO alleged that it occurred on December 4, 2020.

[3] Defendant's appendix does not include the December 4, 2020 TRO.

3

The trial judge found that plaintiff was a protected person under the Act. The judge found defendant committed the predicate act of terroristic threats when he threatened to "slap the shit out of plaintiff" and said "there was nothing . . . she could do about it." The judge found the extensive prior history of incidents between the parties supported her finding the predicate act of terroristic threats.

The judge also found defendant committed the predicate act of harassment based on the following conduct. Defendant continuously screamed and yelled in plaintiff's ear and defendant flashed lights in plaintiff's face with a flashlight on numerous occasions. Defendant pointed his finger in plaintiff's face and told her to "f**king leave his things alone." On numerous occasions defendant would get up in the middle of the night and proceed to the kitchen with a flashlight with the purpose to alarm and annoy plaintiff.

The judge also found that defendant would also record plaintiff without her knowing and post to a social media site. The judge found that these were incidents that occurred on an almost regular basis during the period of November to December 2020.

The judge found that defendant and plaintiff got into an argument in May 2020 when defendant accused plaintiff of breaking the pump on his body wash.

4

Defendant retrieved a stick and started banging on a door with it. This caused plaintiff to fear of her own safety. Plaintiff's exhibit P-4 showed a hole in the center of the door and a dent near the doorknob. The judge found this was "alarming conduct."

In 2019, defendant pushed plaintiff and pummeled her with his fists. In February 2020, defendant repeatedly threatened to kill plaintiff if she did not move out within thirty days.

The judge found that defendant's frequent harassing and threatening behavior became more violent after plaintiff's mother died. The judge considered "the prior history of domestic violence."

The judge found plaintiff to be "extremely credible" and that her testimony was candid, reasonable, consistent, corroborated by the evidence that she produced, and inherently believable. In contrast, the judge found defendant's testimony to be unbelievable. She noted that defendant felt he had the right to be indignant towards plaintiff.

The judge granted a FRO to plaintiff, finding she had a "valid fear for her safety" and needed a FRO to protect her from "the immediate threat of domestic violence" and the "likelihood of reoccurrence." This appeal followed.

Defendant raises the following points for our consideration.

POINT ONE

THE COURT COMMITTED MULTIPLE ACTS OF JUDICIAL MISCONDUCT BY REPEATEDLY FALSIFYING FACTS OF THE DEFENDANT'S TESTIMONY BIASING THE FACT-FINDING RECORD.

POINT TWO

THE COURT FURTHER ENGAGED IN JUDICIAL MISCONDUCT BY HIGHLIGHTING TWO OFF-TOPIC REALITIES AND IN ONE INSTANCE GAVE APPEARANCE OF RELIGIOUS BIAS.

POINT THREE

THE COURT ENGAGED IN JUDICIAL MISCONDUCT BY INFLUENCING THE PLAINTIFF'S TESTIMONY ON DIRECT BY MAKING LEADING DISCOVERY QUESTIONS AND PROXIMALLY INSERTING WORDS AND PHRASES AND THE VISUALIZATIONS AND CONCEPTS THAT FOLLOW INTO THE PLAINTIFF'S DIRECT TESTIMONY THAT ALLOWED THE PLAINTIFF TO COSIGN TO AS OPPOSED TO GIVING INDEPENDENT DETAILS OF HER ACCOUNT.

POINT FOUR

THE COURT COMMITTED ERROR AND POSSIBLE JUDICIAL MISCONDUCT -- PARTIALITY -- BY ALLOWING THE PLAINTIFF TO SPEAK TO ALLEGATIONS BEYOND THE SCOPES OF THE FINAL TRO AND MADE FINDINGS ACCORDING TO SUCH TESTIMONY THAT SHOULD HAVE BEEN INADMISSIBLE.

A-2377-20

THE COURT SHOWED EGREGIOUS JUDICIAL MISCONDUCT IN DISPLAYING APPARENT EXTRAORDINARY COMMITMENT TO SUPPORTING THE PLAINTIFF'S NARRATIVE AND DENIGRATING THE DEFENDANT BY COMMITTING MULTIPLE OMISSIONS OF IMPORTANT FACTUAL CONTEXTS DURING BOTH THE TRIAL AND THE FINDINGS WHILE COMMITTING REPEATEDLY IGNORING EVIDENCE DAMAGING TO THE PLAINTIFF, AND ESSENTIALLY SWITCHING THE BURDEN OF PROOF.

We affirm substantially for the reasons expressed by the trial judge in her detailed oral decision. Defendant's arguments are not supported by the record and lack sufficient merit to warrant much discussion in a written opinion. R. 2:11-3(e)(1)(E). We add the following comments.

We "accord substantial deference to Family Part judges, who routinely hear domestic violence cases." C.C. v. J.A.H., 463 N.J. Super. 419, 428 (App. Div. 2020) (citing J.D. v. M.D.F., 207 N.J. 458, 482 (2011)). When reviewing "a trial court's order entered following [a] trial in a domestic violence matter, we grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." D.N. v. K.M., 429 N.J. Super. 592, 596 (App. Div. 2013) (citing Cesare v. Cesare, 154 N.J. 394, 411-12 (1998)). We do not disturb the "factual findings and legal conclusions of the trial judge unless

[we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant and reasonably credible evidence as to offend the interests of justice." Cesare, 154 N.J. at 412 (quoting Rova Farms Resort, Inc. v. Invs. Ins. Co. of Am., 65 N.J. 474, 484 (1974)). Deference is particularly appropriate when, as here, the evidence is largely testimonial and involves credibility issues, because the judge who observes the witnesses and hears the testimony has a perspective the reviewing court does not enjoy. Pascale v. Pascale, 113 N.J. 20, 33 (1988) (citing Gallo v. Gallo, 66 N.J. Super. 1, 5 (App. Div. 1961)).

The Act defines domestic violence as the commission of a predicate offense enumerated in N.J.S.A. 2C:25-19(a) against a plaintiff who meets the definition of a "victim of domestic violence" set forth in N.J.S.A. 2C:25-19(d). J.D., 207 N.J. at 473. Terroristic threats and harassment are predicate offenses under the Act. N.J.S.A. 2C:25-19(a)(3), (13).

A person commits the petty disorderly persons offense of harassment if they, "with purpose to harass another," make communications "in offensively coarse language, or any other manner likely to cause annoyance or alarm." N.J.S.A. 2C:33-4(a). In evaluating a defendant's intent, a judge is entitled to use "[c]ommon sense and experience." State v. Hoffman, 149 N.J. 564, 577 (1997).

Because direct proof of intent is often absent, "purpose may and often must be inferred from what is said and done and the surrounding circumstances," and "[p]rior conduct and statements may be relevant to and support an inference of purpose." State v. Castagna, 387 N.J. Super. 598, 606 (App. Div. 2006); see also H.E.S. v. J.C.S., 175 N.J. 309, 327 (2003) ("'[A] purpose to harass may be inferred from' . . . common sense and experience." (quoting Hoffman, 149 N.J. at 577)).

A person commits the third-degree crime of terroristic threats "if he [or she] threatens to commit any crime of violence with the purpose to terrorize another," N.J.S.A. 2C:12-3(a), or if he or she "threatens to kill another with the purpose to put [her] in imminent fear of death under circumstances reasonably causing the victim to believe the immediacy of the threat and the likelihood that it will be carried out," N.J.S.A. 2C:12-3(b).

The entry of a final restraining order requires the trial court to make certain findings. The trial court "must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). Second, the court also must determine whether a FRO is required to protect the party seeking restraints from

future acts or threats of domestic violence. Id. at 126-27. This second determination "is most often perfunctory and self-evident, the guiding standard is whether a restraining order is necessary . . . to protect the victim from an immediate danger or to prevent further abuse." Id. at 127.

Applying these standards and based on our careful review of the record, we conclude that the trial judge's credibility determinations, factual findings, and legal conclusions are amply supported by substantial credible evidence adduced during the trial. We discern no indication that the trial judge engaged in any form of judicial misconduct. We find no evidence that the judge was biased, falsified facts, improperly influenced plaintiff's testimony, or ignored facts in defendant's favor.[4]

Nor do we find any evidence that the judge improperly considered allegations beyond the scope of the complaint. We recognize that "[d]ue process requires that a finding of domestic violence be based upon the act or acts of domestic violence alleged in the complaint." Pazienza v. Camarata, 381 N.J. Super. 173, 184 (App. Div. 2005) (citing H.E.S., 175 N.J. at 324-25). Here, the

---

[4] While the judge's findings included minor changes to defendant's testimony, the changes can hardly be characterized as a falsification of his testimony. The changes did not alter the substance of the testimony or the weight of the evidence against defendant.

discrepancy between the date of the incident on either December 4 or December 5, 2020, does not involve a separate incident beyond the allegations in the TRO.

Moreover, Family Part judges must consider evidence of a previous history of domestic violence in determining: (1) whether the defendant acted with intent to harass or terrorize, see H.E.S., 175 N.J. at 327; Castagna, 387 N.J. Super. at 606; (2) whether a FRO should be issued based on a predicate act, Silver, 387 N.J. Super. at 125-126; and (3) whether a FRO is needed to protect the plaintiff against future acts of domestic violence, id. at 126. In Cesare, the Court explained that when determining whether the plaintiff has proven that a predicate act occurred, "the Act does require that 'acts claimed by a plaintiff to be domestic violence . . . be evaluated in light of the previous history of violence between the parties.'" 154 N.J. at 402 (quoting Peranio v. Peranio, 280 N.J. Super. 47, 54 (App. Div. 1995)). Notably, "a pattern of abusive and controlling behavior is a classic characteristic of domestic violence . . . ." Silver, 387 N.J. Super. at 128. Thus, the trial judge did not abuse her discretion by considering the previous history of domestic violence.

The record demonstrates that defendant committed the predicate acts of terroristic threats and harassment, and that an FRO was necessary to protect

11

plaintiff from further acts of domestic violence. The entry of the FRO against defendant was legally correct and appropriate.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

CLERK OF THE APPELLATE DIVISION

A-2377-20