885 A.2d 455 (2005)
381 N.J. Super. 173
Karen PAZIENZA, Plaintiff-Respondent,
v.
Joseph CAMARATA, Defendant-Appellant.
Superior Court of New Jersey, Appellate Division.
Submitted September 27, 2005.
Decided November 7, 2005.
*457 Mark S. Guralnick, Cherry Hill, for appellant.
Respondent did not file a brief.
Before Judges COBURN, LISA and REISNER.
The opinion of the court was delivered by
LISA, J.A.D.
Defendant, Joseph Camarata, appeals from a final restraining order entered under the Prevention of Domestic Violence Act (Act), N.J.S.A. 2C:25-17 to -35, in favor of plaintiff, Karen Pazienza. The predicate offense was harassment (N.J.S.A. 2C:33-4a and c). See N.J.S.A. 2C:25-19a(13). Plaintiff has filed no response to defendant's appeal.
Defendant makes two arguments on appeal: (1) the record does not support the finding of harassment, and (2) the integrity of the trial court's fact-finding process was compromised by the failure to provide defendant with a copy of all of the allegations against him. We reject the first argument. Although there is some merit to defendant's second argument, we conclude that in the context of this case defendant was not deprived of a fair trial, and any error was harmless and does not warrant reversal. Accordingly, we affirm.

I
The parties had a dating relationship that lasted about ten years until they broke up in May 2003. They had previously broken up about five times, but each time reconciled after about one week. The reconciliations were achieved primarily by defendant's persistent communications with plaintiff via telephone calls and emails.
Following the June 2003 break up, defendant followed the same pattern, frequently calling and emailing plaintiff in an effort to restore their relationship. This time, however, plaintiff resisted the entreaties and repeatedly told defendant to stop contacting her. She eventually obtained a caller ID feature on her telephone and avoided defendant's calls. She also blocked out her home website to avoid emails there. However, defendant continued to send emails to plaintiff's worksite *458 and began sending text messages to her cell phone. According to plaintiff, defendant's attempted contacts with her sometimes numbered six to eight per day.
The domestic violence complaint that forms the subject of this appeal was precipitated by an incident that occurred on December 19, 2004. Plaintiff lived in Burlington County with her seven-year-old daughter from another relationship. Defendant lived in Middlesex County. At about 9:16 p.m., plaintiff received a text message that stated: "Kar, I never wanted to move on. I wanted you back. I can see you are watching Desperate Housewives now." (Emphasis added). Indeed, plaintiff and her daughter were watching the television program, "Desperate Housewives." Plaintiff became extremely apprehensive. She believed defendant was looking in her house. She began pacing, looking out her windows and checking the locks. She called her fiancé, extremely upset. She was not able to sleep that night and stated she "became very alarmed, fearful for my safety and my daughter's." This was especially so because of defendant's escalating contacts with her leading up to that incident.
The next morning, plaintiff did not go to work. Instead, she went to the courthouse and applied for a restraining order. The complaint alleged the conduct constituting domestic violence by describing the Desperate Housewives incident and a course of conduct over the previous two months as follows: "DEF SENT A TXT MSG TO PLA `I CAN SEE YOU ARE WATCHING DESPERATE HOUSEWIVES NOW.' DEF SENT 5 TEXT MSG 8/W 12/19-12/20 `CALL ME' `PLEASE CALL ME' `CAN'T SLEEP, AGAIN' `I NEVER WANTED TO BREAK UP' NOV-DEC '04 DEF SENT PLA 44 TXT MESGS...."
The complaint further asserted that there was positive prior history of domestic violence and, on the three lines provided on the face of the complaint stated: "`YOU SHOULD NEVER HAVE BROKEN UP W/ ME' `MARRY ME' PLA ASKED DEF TO STOP CALLING HER 6 WKS AGO. DEF BEGAN EMAILING AND SENDING TEXT MSG. (SEE ATTACHED)."
At the hearing, plaintiff appeared pro se and defendant was represented by counsel. Early in plaintiff's testimony but before she described with particularity any prior incidents of domestic violence, this colloquy occurred between the judge and defense counsel:
[DEFENSE COUNSEL]: Your Honor, also for the record, I note that the domestic violence complaint indicates that there's some attachment, but there was no attachment. I don't know if what you're looking 
THE COURT: That's because that's a confidential statement that  that is not under amended rules that need not be released, but the Court has it.
There was no further discussion about the referenced attachment during the course of the hearing.
On appeal, defendant continues to assert that the complaint with which he was served did not contain an attachment. On our own motion, we issued an order to supplement the appellate record and directed the trial judge to furnish us, under seal, with a copy of the "confidential statement" to which the judge referred. The judge furnished us with two separate documents: (1) a one-page document dated December 20, 2004 signed by plaintiff, entitled "Victim's Voluntary Statement Detailing A Prior History Of Domestic Violence" (Victim's Voluntary Statement), and (2) a four-page document (three pages on a prescribed form plus an extra page for additional *459 entries) dated December 20, 2004, apparently completed by plaintiff, entitled "Confidential Victim Information Sheet (Do Not Give To Defendant)."
The judge informed us that it was the second document that she referred to in the above-quoted colloquy and which she would not release to defendant. The first document was apparently attached to the complaint in the court file, and the judge apparently believed it was attached to the complaint served on defendant and in the hands of his counsel at the hearing. Had the colloquy been further developed, this misunderstanding would have undoubtedly been ascertained, and the judge surely would have provided defendant with a copy of the victim's voluntary statement that was supposed to be attached to the complaint and served upon him in the first place. We will discuss the other document, the Confidential Victim Information Sheet, later.
The Victim's Voluntary Statement, in its entirety, stated:
3 mos ago: During a telephone conversation, the Defendant threatened to hurt Pla, get Pla fired, ruin Pla's life, etc.
18 mos ago: Pla broke up w/ Def. Since Pla broke up, Def has emailed Pla's job, family, boyfriend, ex-husband and even Pla's 7 yr. old daughter stating "I miss you and mommy." Def has also opened email accounts under Pla's name and her boyfriends names.
Pla is fearful of Def.
During the course of her testimony, plaintiff testified to each of the above-mentioned events. Each time, defense counsel objected because the incident was not described in the complaint, and each time the judge retorted that it was described and overruled the objection. This supports the conclusion that defense counsel did not have the attachment to the complaint, but the judge thought he did.
Plaintiff described how she underwent eighteen months of unwanted contact by defendant. She explained that she "had begged, cried, asked him to stop contacting me" but he would not. She took all steps that she believed were possible to avoid defendant's attempted contacts, but was unable to block out emails at her worksite and could not avoid the text messages coming through on her cell phone. She had called the police on the two prior occasions mentioned, once about eighteen months earlier when defendant sent what plaintiff considered an inappropriate email to her young daughter, and then about three months earlier when defendant threatened to get her fired and ruin her life.
Defendant testified, and he admitted making the numerous telephone calls and sending the numerous emails and text messages as described by plaintiff, including those during the last two months as described in the complaint. He admitted sending the Desperate Housewives text message, but insisted that he only intended to convey that he believed plaintiff would be watching the television program because he knew she normally watched it. He denied attempting to convey that he actually saw her, and stated it was just a figure of speech and, perhaps, a poor choice of words. He insisted he was at his home in Middlesex County when he sent the text message.
Defendant admitted that plaintiff had repeatedly asked him and begged him to stop attempting to contact her. He stated he continued because of his hope that the relationship might be resumed. He took the position that this was an on-and-off relationship, and that what he was doing in attempting to resume it was no different than what he had done successfully about *460 five times in the past. However, there is a very big difference. Each time in the past, the parties patched up their differences within about a week. This time, eighteen months went by, plaintiff informed defendant she was getting on with her life, and plaintiff had a new fiancé with whom she shared a summer home during the summer of 2004. Plaintiff's cross-examination of defendant drove the point home:
Q Joe, have we ever broken up for 18 months before?
A No.
Q Joe, have I ever had a boyfriend or a fiancé before? Had I ever had  have I ever called you and told you I was moving on, I have somebody else in my life, I do not love you anymore? Have I ever said that to you before?
A No.
Q Exactly. Thank you.
Plaintiff repeatedly described her fear and frustration. She stated, for example:
I indicated I no longer wanted any communication from him, that I was moving on with my life. And, for the last eight months he has refused to acknowledge my wishes and it has been escalating instead of stopping. The last three months have been extremely scary.
And,
I would just like the Court to know that I am alarmed by this contact and I have great fear of any continued contact, because I've asked him many, many times in many different ways to leave me alone and he has not. He hasn't relented at all. I'm afraid for my safety and my daughter's. I'm a divorced mother, living alone.
The judge found plaintiff's testimony "entirely credible." The judge thus accepted plaintiff's rendition of the events, a finding that is supported by adequate, substantial and credible evidence, and which we will not disturb on appeal. See Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484, 323 A.2d 495 (1974).

II
Before addressing the documents to which defendant was denied access, we address whether the record supports the judge's finding that defendant's conduct consisted of harassment. A person commits that offense if, with purpose to harass another, he:
a. Makes, or causes to be made, a communication or communications anonymously or at extremely inconvenient hours, or in offensively coarse language, or any other manner likely to cause annoyance or alarm;
. . . .
c. Engages in any other course of alarming conduct or of repeatedly committed acts with purpose to alarm or seriously annoy such other person.
[N.J.S.A. 2C:33-4.]
The judge found that defendant's conduct constituted harassment under both subsections a and c. After summarizing the elements of both sections and noting the element common to both, that defendant's purpose was to harass, the judge found that:
in light of the totality of the circumstances the numerous emails that the defendant continued to send, the numerous text messages that the defendant continued to send notwithstanding his admission that he had been told that the plaintiff did not want him to continue sending these and had asked him in many, many different ways to stop doing this and she had not responded to any of these, in light of the fact that he continued to send them the Court can find no other reasonable context for the defendant *461 to have sent these or to have used words such as I can see in light of the past history, I can see that you are watching Desperate Housewives, that there could be no other interpretation that it was intended to cause  to  at the very least annoy the plaintiff, and that constitutes domestic violence under the statute.
I think that it is very telling that notwithstanding again the fact that there are six messages made by the defendant, which he admits to, on the 18th of December, not responded to by the plaintiff, five messages, without even going into the context and the content of what is actually said, but the mere continuous behavior of sending these unwanted communications after he has been told no bespeaks domestic violence in this case in terms of harassment. Five messages on the 19th, another six messages on the 20th, some with  certainly could be interpreted as offensive language to a victim of domestic violence in light of the past history that she has repeatedly asked the defendant not to send these communications.
Again, the Court can find no other interpretation of this type of behavior given the history of this case and the repeated request not to continue sending this that this is constituted  this constitutes harassment under the statute because it was intended to seriously annoy. He was trying to get a rise out of her, a response from her notwithstanding the repeated request to stop. These  this is in a manner that's likely to cause annoyance and alarm to a victim of domestic violence, and the Court finds that this  the testimony and the evidence presented in this matter justifies the entry of a final restraining order against the defendant.
We agree with the judge's analysis. Under the Act, an act of "Domestic Violence" is defined as the occurrence of a specified offense under the Code of Criminal Justice inflicted upon a person protected by the Act. N.J.S.A. 2C:25-19a; Corrente v. Corrente, 281 N.J.Super. 243, 248, 657 A.2d 440 (App.Div.1995). One such offense is harassment (N.J.S.A. 2C:33-4). N.J.S.A. 2C:25-19a(13).
The judge correctly considered the prior history of domestic violence in evaluating defendant's conduct that was the subject of the present complaint. The Act expressly directs the court to consider such history, "including threats, harassment and physical abuse." N.J.S.A. 2C:25-29a(1). "Because a particular history can greatly affect the context of a domestic violence dispute, trial courts must weigh the entire relationship between the parties and must specifically set forth their findings of fact in that regard." Cesare v. Cesare, 154 N.J. 394, 405, 713 A.2d 390 (1998). A defendant's prior abusive acts should be considered "regardless of whether those acts have been the subject of a domestic violence adjudication." Ibid. "Therefore, not only may one sufficiently egregious action constitute domestic violence under the Act, even with no history of abuse between the parties, but a court may also determine that an ambiguous incident qualifies as prohibited conduct, based on a finding of violence in the parties' past." Id. at 402, 713 A.2d 390. The judge applied these principles and evaluated defendant's present conduct in the context of the past history.
A single communication can satisfy N.J.S.A. 2C:33-4a. However, as we have stated, consideration of prior communications and conduct is not only permitted but required in the domestic violence context. "In determining whether a defendant's conduct is likely to cause the required *462 annoyance or alarm to the victim, that defendant's past conduct toward the victim and the relationship's history must be taken into account. The incidents under scrutiny must be examined in light of the totality of the circumstances." State v. Hoffman, 149 N.J. 564, 585, 695 A.2d 236 (1997). The Desperate Housewives text message on December 19, 2004, when viewed in the context of defendant's prior conduct towards plaintiff, was likely to cause plaintiff annoyance, which means "to disturb, irritate, or bother." Id. at 580, 695 A.2d 236. The nature and content of the message intruded upon plaintiff's legitimate expectation of privacy. Id. at 583, 695 A.2d 236. A purpose to harass on defendant's part is easily inferred, using "[c]ommon sense and experience." Id. at 577, 695 A.2d 236.
We are also satisfied that defendant's course of conduct over the two-month period leading up to the complaint satisfied the elements of N.J.S.A. 2C:33-4c. Coming on the heels of many months of unwanted contact and two calls to the police because of the nature of some of the contacts, defendant's repeated unwanted contacts, often on multiple occasions each day, support the judge's finding that defendant's repeatedly committed acts were made with a purpose to seriously annoy plaintiff.
We find unpersuasive defendant's reliance on Bresocnik v. Gallegos, 367 N.J.Super. 178, 842 A.2d 276 (App.Div.2004), and Sweeney v. Honachefsky, 313 N.J.Super. 443, 712 A.2d 1274 (App.Div.1998), in support of his argument that his efforts were those of a lovelorn suitor to repair the relationship and did not constitute harassment. The conduct here far exceeded the conduct in those cases.

III
We now address defendant's argument that the integrity of the fact-finding process was compromised by the failure to provide him with a copy of all of the allegations against him. Due process requires that a finding of domestic violence be based upon the act or acts of domestic violence alleged in the complaint. H.E.S. v. J.C.S., 175 N.J. 309, 324-25, 815 A.2d 405 (2003); L.D. v. W.D., Jr., 327 N.J.Super. 1, 4, 742 A.2d 588 (App.Div.1999); J.F. v. B.K., 308 N.J.Super. 387, 391-92, 706 A.2d 203 (App.Div.1998). "It constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint." J.F. v. B.K., supra, 308 N.J.Super. at 391-92, 706 A.2d 203. A due process violation can easily be avoided by granting a party a reasonable adjournment if confronted by new allegations at the time of trial in order to afford the party an ample opportunity to meet the charges. H.E.S. v. J.C.S., supra, 175 N.J. at 324-25, 815 A.2d 405.

A.
For purposes of our analysis, we accept as true the assertion of defense counsel that the Victim's Voluntary Statement was not attached to the complaint. Both parties testified about the matters contained in the Statement. Although defense counsel objected to plaintiff's specific testimony about the email to plaintiff's daughter and the threatening phone call on the basis that the allegations were not contained in the complaint, defendant did not assert surprise or prejudice by lack of notice and did not request an adjournment to enable him to prepare to meet the allegations.
Significantly, on two occasions during the hearing, without a request by defense counsel, the judge offered him the opportunity to recess the hearing to review the printed out email and text messages produced by plaintiff. Each time, counsel *463 conferred with defendant and declined the offer. On one occasion, when counsel stated his wish to "maintain some economy and efficiency" in the proceeding, the judge replied: "We're not here to be necessarily expeditious, but to, you know, find justice in the matter. And, if you feel that you need that time on behalf of your client to review it with him I'll give you that time, but I'm not going to, you know, refuse to admit those on that  on the basis of that objection."
This is not a situation like J.F. v. B.K., where the predicate offense of the domestic violence finding was based upon conduct not set forth in the complaint. Nor is it a situation like H.E.S. v. J.C.S., where the complaint was, in effect, amended by testimony regarding acts not set forth in the complaint, and defendant was denied a continuance of reasonable duration to meet the charges which ultimately formed the basis of the predicate offense. In the case before us, the conduct constituting the predicate offense, the Desperate Housewives text message and the two-month period of repeated messages leading up to it, were clearly set forth in the complaint and constituted the basis for the ultimate finding of the predicate offense of harassment.
Although the prior history was properly considered as providing context to the acts underlying the predicate offense, this was not a proceeding that transformed those prior acts into the predicate offense. Defendant, represented by counsel, did not express the need for additional time to meet the allegations of prior conduct, and has asserted no prejudice from plaintiff's testimony about those prior acts. Thus, we are satisfied that under the circumstances here, the failure to have provided defendant with advance notice of those prior acts was inconsequential, and any error in that regard was harmless.

B.
The Confidential Victim Information Sheet is on the form prescribed in the Domestic Violence Procedures Manual (Procedures Manual), Appendix 1. This manual, promulgated under the authority of the Supreme Court of New Jersey and the Attorney General of New Jersey, provides guidance to courts and domestic violence intake staff. The Confidential Victim Information Sheet directs that it not be given to the defendant. Following that directive, the trial judge did not release it to defendant. The Procedures Manual provides that a victim seeking to file a domestic violence complaint should complete the Confidential Victim Information Sheet, after which, using that information, a professional staff person should assist the victim in filling out the complaint. State of N.J. Domestic Violence Procedures Manual §§ 4.3.1, 4.3.5 (2004). This is a sensible two-step procedure.
However, here is the problem. The first page of the form calls for personal and identifying information about the parties, such as address, place of employment, telephone number, social security number, and the like. This information, particularly with respect to the victim, is clearly confidential and should not be disclosed to the defendant. The non-disclosure has no effect on the defendant's ability to defend the charges. The remaining two pages call for certain specific information, such as whether police responded, whether anyone was arrested, whether weapons were used in the incident, and the like. Some of this information, which is provided by "Yes" or "No" answers, is carried over to the complaint when it is prepared. Some of the questions, however, are not provided for in the complaint. These include, for example, whether the plaintiff or anyone else was injured, whether any photographs *464 were taken, or whether any property was damaged. If the plaintiff testifies at the hearing in a manner contrary to the answers on the form, those answers might well provide a proper basis for cross-examination regarding the plaintiff's credibility and might well be admissible as substantive evidence as prior inconsistent statements. See N.J.R.E. 803(a)(1).
Further, the form asks the plaintiff to provide in narrative form a description of the incident, with the plain language direction: "Please explain why you are seeking a restraining order? Describe Where it happened and When it happened (time, month, year)[.]" Similarly, it provides for a narrative response to the following: "Any prior incidents of domestic violence, reported or unreported? (Include month, year, time)." In these narrative descriptions, the plaintiff might provide information that never makes its way into the complaint that is (1) inconsistent with the contents of the complaint, (2) inconsistent with her later hearing testimony, (3) potentially exculpatory to the defendant, or (4) highly prejudicial to the defendant if believed (e.g. "He used to beat up his old girlfriend").
The Confidential Victim Information Sheet is placed in the court file. Procedures Manual, supra, § 4.10.5. The judge, who acts as the factfinder at the domestic violence hearing, has access to it. This presents several potential problems. If it contains information inconsistent with the complaint or the plaintiff's testimony, the judge is placed in the awkward position of determining whether to divulge this purportedly confidential information and, if so, to interject himself or herself into the process by attempting to flesh out the truth. This Hobson's choice should not be necessary.
If the statement contains prejudicial comments that are nowhere else divulged in the record, we must trust, as we do, that a trial judge will not consider that information in reaching a decision. Trial judges are called upon to do this on a regular basis, when they exclude proffered evidence, review documents in camera, and engage in other proceedings in which they become aware of information that does not become part of the record for their ultimate determination. However, if there is no need to create such a situation, the situation should be avoided.
Of course, a defendant may be deprived of potentially exculpatory information or inconsistent information that he might find useful in advocating his case. Finally, a defendant might justifiably feel a sense of unfairness when the judge has access to a confidential document written by his adversary about him, his background, and the very incident and surrounding circumstances about which the judge will make the ultimate findings of fact that will determine his fate.
If there were a countervailing necessity for confidentiality of this information, we would balance that against any potential prejudice to the defendant. However, unlike the information on the first page of the Confidential Victim Information Sheet, we can perceive no reason for confidentiality of the information on the second and third pages. In our view, these pages should be furnished to the defendant for his inspection. Perhaps they should be designated as a separate document, and the "Confidential Victim Information Sheet" should consist of only what is now the first page of that document. We refer this matter to the Supreme Court Committee on Family Practice and the Supreme Court's State Domestic Violence Working Group for their consideration of recommended modifications to the Procedures Manual.
*465 As we stated, we have obtained a copy of the Confidential Victim Information Sheet prepared in this case. The answers to the "Yes" or "No" questions are all consistent with the complaint and the testimony. Plaintiff did not separately list any prior incidents of domestic violence in the space provided on the form. In describing the incident information, she set forth this narrative:
Broke up with defendant approx 18 months ago. Since then he has been e-mailing, calling and text messaging. Have spoken to him and asked him to stop. He e-mailed my 7 year old daughter and I called police. They filled out paperwork and spoke to him & told him I could get restraining order. He has not stopped. He set up e-mail accts under my name and my boyfriends and e-mails my work. I have 42 text messages on my phone for a one month period. Last night he text messaged me while I was at home alone with my daughter watching T.V. He said he was watching me watch T.V. His contact is escalating and I told him approx 6 weeks ago that if he did not stop I would have to seek protection. Approx 3 months ago I filled out another report with police because he threatened to ruin my life, get me fired. He has also sent a letter to my boyfriend. I am becoming extremely afraid with his behavior.
We are satisfied that the information provided here was substantially consistent with that contained in the complaint and testified to by plaintiff at the hearing and that no prejudicial information that was not part of the record was included. We are therefore satisfied that defendant suffered no prejudice by a lack of prior disclosure. Thus, any error was harmless and did not affect the outcome of the proceeding.
Affirmed.