**RECORD IMPOUNDED**

**NOT FOR PUBLICATION WITHOUT THE
APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-3021-23

M.K.L.,[1]

    Plaintiff-Respondent,

v.

R.L.D., JR.,

    Defendant-Appellant.

_____

        Submitted September 24, 2025 – Decided October 27, 2025

        Before Judges Gummer and Paganelli.

        On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Middlesex County Docket No. FV-12-2051-24.

        Arndt, Sutak & Miceli, LLC, attorneys for appellant (Lauren A. Miceli and Victoria A. Wilton, on the briefs).

        Rozin Golinder Law, LLC, attorneys for respondent (Francesa P. Buarne, on the brief).

---

[1] We use initials to protect the domestic violence victim's privacy. R. 1:38-3(d)(10).

PER CURIAM

In this appeal, defendant argues the trial court violated his right to due process and erred in granting plaintiff a final restraining order (FRO) against him pursuant to the Prevention of Domestic Violence Act (PDVA), N.J.S.A. 2C:25-17 to -35. We affirm.

We glean the procedural history and facts from the trial record. On April 1, 2024, plaintiff obtained a temporary restraining order (TRO) against defendant. Plaintiff alleged that a few days prior, defendant had harassed and assaulted her during a physical altercation at their son's school. In her TRO, she described a prior history of domestic violence including:

> 9/18/23: Def[endant] went looking for pla[intiff] at her parent[s'] house. Def[endant] threatened pla[intiff]'s parents, "You better find her before I do. If I find her first, it will be a problem." Pla[intiff] has ring surveillance of def[endant]'s statements. 11/26/19: `def[endant] threw a drink in pla[intiff]'s face and pulled pla[intff] off of [a] chair by her feet. Def[endant] took pla[intiff]'s phone and shoes and threw them down the street. Pla[intiff] had to get a new phone. For the past 12 years def[endant] has broken at times . . . pla[intiff]'s property such as [an] iPad and cell phone. Def[endant] has thrown household items, not making contact with pla[intiff]. Def[endant] has screamed, cursed and called pla[intiff] names such[ as] "b[***]h, w[**]re, bad mother." This occurred in front of the minors, at times.

2

The FRO hearing was initially scheduled for April 11, 2024, but was adjourned to April 17, 2024. Both parties appeared for the hearing. The trial court called the case at 9:29 a.m. The court, in detail, explained how the proceeding would be conducted, the legal standards for the entry of an FRO, and the consequences to defendant if an FRO was entered. The court stated: "Both parties . . . have a right to consult with an attorney and retain an attorney if you wish before we begin. . . . If you do wish to consult with or retain an attorney, . . . I will afford a brief continuance."

Plaintiff stated she was ready to proceed but wanted to confirm that everyone had received her Amended TRO (ATRO) filed on April 11. The trial court stated the ATRO was not in the court's file or in the court's system and defendant stated he had not been served with the ATRO.

The trial court learned the ATRO was being processed. The court stated the matter would be recalled after the ATRO was processed. The trial transcript reveals the following colloquy:

> The Defendant: Due to the fact [that] I haven't had time to look over or prepare anything in defense of her accusation, when I do, we have a court appearance next week. Can we just continue to that, because I --
>
> The Court: Well, the next week I believe is the FD matter --

The Defendant:  Yes, sir.

The Court:  -- that I believe I have with the two of you.

Let me get the [ATRO].  Let's have it -- it will be served upon you today.  You can review it.  You can let me know after reviewing it whether you wish to proceed today after reading it or whether you want a continuance, and I will address it at that time.

The Defendant:  Yes, sir.  Thank you.

[(Capitalization modified).]

The ATRO added previous history of domestic violence and corrected a date of a prior incident of domestic violence.  The amended language provided:

The date on one of the previous incidents need[s] to be amended to 11/25/2018, not 11/26/2019.

Various dates 2/1/2024; 1/15/2024; 12/6/2023; 10/11/2023.  Oct[ober] 2023 – I told him not to come to my house or my parents['] house and to do [custody] exchange at police station; he agreed to police station, but would still take it upon himself to go to my residence and or my parents (unannounced).  Even after asking him[] to stop, he still showed up.  12/2/23 – my daughter and a friend were dropped off [at] a trampoline park on a Saturday evening.  I was responsible for picking them up [at] 11[ p.m.].  My daughter called to tell me [defendant] was there and cornered her.  He then forced her to leave with him despite him knowing I was picking her up.  I continued to call her but her phone was off.  Upon my arrival, she was walking out with him but saw me and immediately reported to my car.

4

10/24/2024 Unreported – I arrived [at the] Piscataway Police Department to exchange our son. My daughter was in my car also in the backseat. After [our son] got in [defendant's] vehicle, I proceeded to drive to the exit when [defendant] sped up and cut me off, I had to veer a bit to the left. (I took a photo).

11/1/2024 Reported – [defendant] went to ou[r] daughter[']s school, berated her outside & took the cell phone she uses which belongs to me. He knows that is . . . my phone and I pay for it/I made a report to Piscataway and North Plainfield. M[y] daughter called me hysterically crying that morning from his actions there. Various dates throughout 10+ years unreported – he has made verbal and text messages to me that I better not go to the police. Telling me I better not test him. He has stopped my 80[-]year[-]old mom on the road threatening to take me to court or ripping things out of her car in the middle of the road.

Defendant was served with the ATRO at 10:32 a.m. The court recalled the matter at 1:37 p.m. The trial transcript reveals the following colloquy:

> The Court: Let me ask the defendant, have you received a copy of th[e ATRO]?
>
> The Defendant: I did, sir.
>
>     . . . .
>
> The Court: Sir, are you ready to proceed today --
>
> The Defendant: Yes.
>
> The Court: -- or would you like an adjournment?
>
> The Defendant: Yes, I'm ready to proceed.

5

The Court: And you understand you've received the [ATRO] today and you've had sufficient time to review it?

The Defendant: Yes, sir.

[(Capitalization modified).]

The parties were the only witnesses who testified during the hearing. Plaintiff testified that on March 28, 2024, she was concerned defendant would attempt to pick their son up from school. She planned to be at the school before their son was released. However, as she traveled to the school, school personnel called her to advise that defendant was already there. She described herself as "frantic" and "begged" school personnel not to release the child to defendant until she arrived.

Plaintiff explained that on her arrival, defendant had twice screamed at her that she "should be ashamed of [her]self." Plaintiff stated she had walked up to the school door and rang the bell. She "took a step back," and defendant "proceeded to step in front of the door." Plaintiff took a picture with her cell phone of defendant at the doorway. The picture was admitted into evidence without objection.

Plaintiff testified that the school principal had escorted their son to the doorway. Plaintiff saw their son had been crying. She stated that "[a]s soon as

the door opened, [defendant] proceeded with his right hand to grab [the child]'s left wrist." She stated the son tried to resist, and defendant "put his hands under [the son's] armpits to just pick him up."

Plaintiff took a video and "still shots" of the encounter and offered them into evidence. Defendant objected to the admission of the video, arguing "the entire incident was captured on school video, which [he] requested, . . . [but] ha[d] not yet been provided." Further, defendant stated he "would rather get the entire video, which []captures . . . the entire process [ra]ther than just chosen snapshots, which [plaintiff] wants to present." The trial court overruled the objection, noting the hearing had been scheduled for that date and defendant had not requested an adjournment before the trial began. The video was entered into evidence.

Plaintiff testified their son "grabbed hold of [her] left arm." She described that she was walking "backwards, sideways" as defendant was walking towards his car. Further, plaintiff stated defendant, with his "free" left arm, "shoved pushed her . . . shoulder and . . . right arm" and caused her to "kind of stumble[] a little bit."

Plaintiff stated that when they reached defendant's car, the child was kicking to avoid being placed in the car. She testified that during the "scuffle"

she sustained "bruise[s] on [her] right arm and [her] right butt cheek."  Plaintiff offered pictures of the bruises into evidence.  The pictures were admitted without objection.  Plaintiff testified that the police arrived and she left with the child.

Defendant testified that as of March 28, 2024, he "had not seen [his] son for 23 days and counting."  He admitted telling plaintiff she "should be ashamed of" herself.  However, he denied screaming.  Further, he admitted he "did go in front of the [school] door."  He admitted that he had "pick[ed the son] up, and [he] was walking away."  Defendant explained that there was a "physical struggle" because plaintiff had interjected "herself into the situation" and "impeded [his] progress, [and] had her hands on" his hands.  Further, defendant stated that "in an effort to free [him]self from [plaintiff] physically, [he] did sway [his] arm, which was captured on video . . . to free [him]self from her."

As to the parties' domestic violence history, plaintiff testified that on November 25, 2018, she, defendant and their children were visiting friends.  She described that she and defendant "had a disagreement, . . . [and defendant] took his drink and threw it in [her] face."  She noted the children were present.  She testified defendant "got up from the table, came around and dragged [her] by [her] feet off [her] chair."  She stated defendant got her car keys and while

fighting over them, she struck her hand on a table and sustained a cut. In addition, she testified that defendant took her shoes and cell phone and threw them in the neighbor's yard. The shoes and broken cell phone were retrieved the next day. Also, on the next day, defendant refused to let plaintiff and their daughter into the house. The court entered a series of photographs, depicting plaintiff's "cut" and "bruises" into evidence, without objection.

Plaintiff testified that following these incidents, defendant sent her text messages stating: "Involve the police . . . and trust this won't get better" and "[i]nvolve the police and risk my career and embarrassment after you already know what I've gone through. You already know my situation and that I have nobody. You're definitely a class act." The court entered copies of the text messages into evidence, without objection.

As to the November 2018 incident, defendant claimed plaintiff assaulted him and "punched [him] in the face." He claimed he sustained a bloody nose and lip. The court entered photographs of defendant's nose and lip into evidence without objection.

The parties offered additional testimony concerning their history of domestic violence. Plaintiff stated the police station was the best place for her and defendant to exchange the children. However, defendant would take it upon

himself to drop their son at her mother's house or her house unannounced. Plaintiff alleged defendant was harassing her by just doing what he wanted despite her requests.

Recognizing plaintiff's testimony concerning the exchange of the children was included in the ATRO, defendant stated it was unfortunate he did not know plaintiff obtained the ATRO because he had text messages on his phone that could show the prior exchanges were conducted at plaintiff's home, his home, and plaintiff's parents' home. However, he could not show the messages to the court. The court reminded defendant he wanted to proceed despite the ATRO. Defendant responded that the court was "a hundred percent right. I could have adjourned it. I did not."

Plaintiff testified that on September 18, 2023, defendant went to her home, but she was not there. He then went to her parents' home, "was cursing about" her and "told [her] mother that she better find [plaintiff] before he d[id] or it's going to be a problem." The court declined to admit video evidence into the record because defendant "acknowledged" plaintiff's testimony.

Further, plaintiff testified that on October 24, 2023, after exchanging custody of their son at a police station, she was approaching the exit in her car and defendant "sped up and cut[ her] off," causing her "to veer a little bit to the

left." The court entered a photograph of defendant's car in front of plaintiff's car, without objection. Aside from acknowledging it was his vehicle in the photograph, defendant stated he had "no idea what [plaintiff] was talking about."

Plaintiff stated that on November 1, 2023, defendant arrived at their daughter's school, had the daughter go outside and took her phone from her. Plaintiff noted defendant was aware that plaintiff owned the phone and had paid for it. Defendant admitted he had taken the phone, but stated it was a "disciplinary action."

Plaintiff testified that on December 2, 2023, the daughter was at a trampoline park. The plan was for plaintiff to pick the daughter up from the park. Defendant testified the parties' son wanted to go to the trampoline park and, because of his young age, needed supervision. Defendant and the parties' son arrived at the park. Defendant stated he was unaware the daughter was at the park but spoke to her after seeing her there. Defendant told the daughter she was leaving with him. However, plaintiff arrived and the daughter walked to plaintiff's car and left with her.

At the conclusion of the hearing, the trial court noted it heard the parties' testimony and considered the admitted evidence. The court stated "plaintiff came prepared to testify, . . . she presented her case clearly, . . . had a good

11

demeanor, [and] was respectful." The court also stated defendant "was respectful" and "testified clearly." Nevertheless, in determining who was "more believable," as to the events of March 28, the court concluded plaintiff established harassment by "the striking, the kicking, the shoving or offensive touching by the defendant to the plaintiff." Further, the court concluded plaintiff established assault. The court rejected defendant's contention that plaintiff "interject[ed] herself in front of . . . [him] or . . . put[] herself in harm[']s way."

In considering the parties' history of domestic violence, the court noted they were in "a mutually abusive relationship." The court stated the finding of a domestic violence history was supported by the testimony of both parties. Therefore, in considering the events of March 28 and the parties' history, the court concluded "plaintiff ha[d] met her burden" to establish the predicate acts of harassment and assault.

Next, the court considered "whether there[ wa]s an immediate danger to the person or property warranting the entry of an FRO, whether the victim, . . . the children, [or] . . . property, . . . need[ed] to be protected from immediate danger or further abuse."

The court noted that "when the predicate act is an offense that inherently involves the use of physical force and violence, the decision to issue an FRO is

12

most often perfunctory and self-evident," relying on <u>A.M.C. v. P.B.</u>, 447 N.J. Super. 402 (App. Div. 2016).

Nevertheless, the court considered the statutory factors enumerated in N.J.S.A. 2C:25-29(a) and determined an FRO was necessary because: (1) there was a previous history of domestic violence; (2) there existed an immediate danger to person or property; (3) the best interests of plaintiff and the children required an FRO; and (4) defendant exerted control or sought to exert control.

On appeal, defendant contends the trial court erred because: (1) it did not afford defendant all due process rights and failed to adjourn the hearing, and (2) it made incorrect evidential rulings. Defendant also argues plaintiff did not satisfy her burden because the parties' March 28, 2024 incident was domestic contretemps, not domestic violence, and plaintiff used the PDVA as a sword to gain an advantage in the parties' ongoing dispute involving the children. We consider these contentions in turn.

I.

Defendant contends he was not provided with an adequate opportunity to respond to the ATRO. He asserts the court should have granted his initial request for an adjournment, especially considering his self-representation. He alleges the court "pressed" him and its inquiry caused him to withdraw his

13

request for an adjournment. He asserts he was not prepared and "expressed the same on a multitude of occasions."[2] Further, he contends he had no ability to obtain evidence to combat the ATRO. He asserts he needed additional time to prepare a defense and seek counsel if he chose.

"[O]rdinary due process protections apply in the domestic violence context, notwithstanding the shortened time frames for conducting a final hearing." J.D. v. M.D.F., 207 N.J. 458, 478 (2011) (citing N.J.S.A. 2C:25-29(a); H.E.S. v. J.C.S., 175 N.J. 309, 321-23 (2003)). Therefore, "[a]t a minimum, due process requires that a party in a judicial hearing receive 'notice defining the issues and an adequate opportunity to prepare and respond.'" Ibid. (alteration in original) (quoting H.E.S., 175 N.J. at 321).

In H.E.S., the Court held "[d]efendant's due process rights were . . . violated by the trial court's refusal to grant an adjournment after plaintiff alleged an incident of domestic violence not contained in the complaint." Ibid.

---

[2] In defendant's brief the "multitude of occasions" refers to the initial colloquy between defendant and the court when defendant suggested continuing the matter and the trial court responded that it would have defendant served with the ATRO and defendant could "review it" and let the court "know after reviewing it whether [he] wish[ed] to proceed today . . . or whether [he] want[ed] a continuance."

We have held that it "it is clearly improper to base a finding of domestic violence upon acts or a course of conduct not even mentioned in the complaint." L.D. v. W.D., Jr., 327 N.J. Super. 1, 4 (App. Div. 1999). Further, "[i]t constitutes a fundamental violation of due process to convert a hearing on a complaint alleging one act of domestic violence into a hearing on other acts of domestic violence which are not even alleged in the complaint. . . ." Ibid. (quoting J.F. v. B.K., 308 N.J. Super. 387, 391-92 (App. Div. 1998)).

In Pazienza v. Camarata, we considered defendant's argument that "the trial court's fact-finding process was compromised by the failure to provide [him] with a copy of all of the allegations against him." 381 N.J. Super. 173, 177 (App. Div. 2005). Defendant contended he was not provided with the "Victim's Voluntary Statement Detailing A Prior History of Domestic Violence." Id. at 179. The statement "was supposed to be attached to the complaint and served upon" defendant, ibid.; and "[f]or purposes of our analysis, we accept[ed] as true the assertion of defense counsel that the . . . [s]tatement was not attached to the complaint." Id. at 185.

We recognized that "[b]oth parties testified about the matters contained in the [s]tatement." Ibid. Further, we noted that "[a]lthough defense counsel objected to plaintiff's specific testimony about . . . the allegations [that] were

15

not contained in the complaint, defendant did not assert surprise or prejudice by lack of notice and did not request an adjournment to enable him to prepare to meet the allegations." Ibid.

Moreover, we noted "[s]ignificantly, on two occasions during the hearing, without a request by defense counsel, the judge offered him the opportunity to recess the hearing to review . . . [materials] produced by plaintiff. Each time, counsel conferred with defendant and declined the offer." Ibid.

We distinguished J.F. and H.E.S.:

> This is not a situation like J.F. . . . , where the predicate offense of the domestic violence finding was based upon conduct not set forth in the complaint. Nor is it a situation like H.E.S. . . ., where the complaint was, in effect, amended by testimony regarding acts not set forth in the complaint, and defendant was denied a continuance of reasonable duration to meet the charges which ultimately formed the basis of the predicate offense.
>
> [Pazienza, 381 N.J. Super. at 185-86.]

Instead, we stated "the conduct constituting the predicate offense, . . . w[as] clearly set forth in the complaint and constituted the basis for the ultimate finding of the predicate offense." Id. at 186. Moreover,

> [a]lthough the prior history was properly considered as providing context to the acts underlying the predicate offense, this was not a proceeding that transformed those prior acts into the predicate offense.

> Defendant, represented by counsel, did not express the need for additional time to meet the allegations of prior conduct, and has asserted no prejudice from plaintiff's testimony about those prior acts. Thus, we are satisfied that under the circumstances here, the failure to have provided defendant with advance notice of those prior acts was inconsequential, and any error in that regard was harmless.
>
> [Ibid.]

Applying this well-established law, we similarly are convinced defendant's due process rights were not violated. In addition, defendant was not prejudiced by the service of the ATRO on the day of trial, and any error in that respect was harmless.

The trial court preserved defendant's right to due process. At the outset of the hearing, the court explained to the parties how the hearing would be conducted, the legal standards for the entry of an FRO, and the consequences to defendant if an FRO was entered. Further, the court stated defendant would be "afford[ed] a brief continuance" to "consult with or retain an attorney."

Defendant does not claim he misunderstood any of that information. Instead, on appeal, he suggests "[h]e required additional time to . . . potentially seek counsel if he so chose." However, defendant ignores that the trial court told him it would grant him a continuance to "consult with or retain an attorney," but he decided to proceed. Given defendant's rejection of the offer to continue

17

the trial so he could retain counsel, the court could reasonably conclude he sought to represent himself. Certainly, "a competent litigant may represent himself or herself in a matter in which he or she is a party, subject to exceptions set forth in statutes, court rules, and case law." N.J. Div. of Child Prot. v. R.L.M., 236 N.J. 123, 131 (2018).

Further, the court gave defendant an opportunity to review the ATRO and request an adjournment. Defendant decided to proceed. Defendant's suggestion that the trial court "pressed" him to "withdraw his request for an adjournment, and ultimately continue[] with . . . trial" is belied by the record. There is no suggestion defendant was forced or compelled to proceed. Instead, after the court gave him an opportunity to request an adjournment, defendant voluntarily and intentionally waived any right to seek an adjournment and chose to proceed with the trial. See Knorr v. Smeal, 178 N.J. 169, 177 (2003).

Moreover, there is no suggestion—aside from plaintiff's allegation regarding the parties' exchange of the children at the police station, in lieu of at her or her parents' home—that defendant was not prepared to address plaintiff's allegations concerning their history of domestic violence. Instead, defendant testified without hesitation regarding their past. Indeed, defendant acknowledged the parties had a "prior history."

"To be sure, some defendants will know full well the history that plaintiff recites and some parties will be well-prepared . . . ." J.D., 207 N.J. at 480. "Others, however, will not, and in all cases the trial court must ensure that defendant is afforded an adequate opportunity to be apprised of those allegations and to prepare." Ibid. Here, the trial court satisfied this obligation by: (1) advising defendant of his right to an adjournment after learning of plaintiff's ATRO; (2) recessing the matter for service of the ATRO and permitting defendant time to review plaintiff's assertions about their domestic violence history; (3) recalling the matter and inquiring if defendant wanted an adjournment; and (4) continuing only after defendant stated he was ready to proceed and had sufficient time for review. Thus, every indication, except purported text messages concerning the exchange of the children, leads to the conclusion defendant was prepared to refute plaintiff's evidence at trial. There is no indication defendant was "surprised." See Pazienza, 381 N.J. Super. at 185. Under these circumstances, there was no error in the trial court not adjourning the hearing to another date.

Moreover, although defendant contends "his ability to obtain evidence to combat the new issues presented in the [ATRO] was non-existent," he fails to articulate a scintilla of evidence, except purported messages concerning the

A-3021-23

exchange of the children, that he would have produced had the court adjourned the hearing.

While we are convinced the trial court did not err, we are similarly convinced that defendant was not prejudiced and any purported error was harmless. During the hearing, defendant claimed that had he known of the ATRO, before the day of the hearing, he would have produced messages concerning the parties' arrangements regarding the exchange of their children. The import of that evidence would have been to dispel plaintiff's assertion that defendant arrived unannounced at her and her parents' house contrary to their arrangement.

However, even if we were to discard that allegation, defendant admitted the parties had "prior history." Moreover, the trial court found the parties were in "a mutually abusive relationship" and that "the history of domestic violence abounds between these parties." Thus, even without plaintiff's allegation regarding their arrangement, the parties' prior history of domestic violence was overwhelmingly supported by credible evidence in the record.

## II.

Having considered and rejected defendant's due process arguments, we turn to his arguments concerning the trial court's evidentiary ruling regarding the March 28 video and the merits of the entry of the FRO against him. Defendant argues the court erred in overruling his objection to plaintiff's offer of the video into evidence on the basis that no adjournment had been requested. In addition, defendant contends his objection should have been sustained under N.J.R.E. 106.

Further, he asserts the trial court failed to recognize that "[t]he PDVA is not intended to encompass 'ordinary domestic contretemps'" and the PDVA "should not permit litigants to use the domestic violence process as 'a sword rather than a shield.'" He argues "[g]iven the [c]ourt's acknowledgment that the parties' dispute was largely caused by their disagreements regarding parenting time, it would have been appropriate for the [c]ourt to consider relevant case law regarding domestic contretemps and the use of a [TRO] to gain an 'advantage' in custody proceedings." Moreover, he contends plaintiff "failed to produce adequate, substantial, and credible evidence to support" a finding of "the requisite predicate act" or "that a[n FRO] was necessary under the circumstances."

Our review of a trial court's factual findings is limited. Cesare v. Cesare, 154 N.J. 394, 411 (1998). "The general rule is that findings by the trial court are binding on appeal when supported by adequate, substantial, credible evidence." Id. at 411-12 (citing Rova Farms Resort, Inc. v. Invs. Ins. Co., 65 N.J. 474, 484 (1974)). Moreover, "[b]ecause of the family courts' special jurisdiction and expertise in family matters, [we] . . . accord deference to family court fact[-]finding." Id. at 413. Deference is particularly proper "when the evidence is largely testimonial and involves questions of credibility." Id. at 412 (quoting In re Return of Weapons to J.W.D., 149 N.J. 108, 117 (1997)).

In addition, "[a] trial court's evidentiary rulings are 'entitled to deference absent a showing of an abuse of discretion, i.e., there has been a clear error of judgment.'" Grewal v. Greda, 463 N.J. Super. 489, 503 (App. Div. 2020) (quoting Belmont Condo Ass'n v. Geibel, 432 N.J. Super. 52, 95 (App. Div. 2013)). Therefore, "[o]n appellate review, a trial court's evidentiary ruling must be upheld 'unless it can be shown that the trial court palpably abused its discretion, that is, that its finding was so wide [of] the mark that a manifest denial of justice resulted.'" Ibid. (second alteration in original) (quoting Geibel, 432 N.J. Super. at 95-96). However, we review questions of law determined by

22

the trial court de novo. Smith v. Millville Rescue Squad, 225 N.J. 373, 387 (2016).

"We view the task of a judge considering a domestic violence complaint, where the jurisdictional requirements have otherwise been met, to be two-fold."[3] Silver v. Silver, 387 N.J. Super. 112, 125 (App. Div. 2006). "First, the judge must determine whether the plaintiff has proven, by a preponderance of the credible evidence, that one or more of the predicate acts set forth in N.J.S.A. 2C:25-19[(a)] has occurred." Ibid. "In performing th[is] function, 'the [PDVA] . . . require[s] that acts claimed by a plaintiff to be domestic violence be evaluated in light of the previous history of violence between the parties.'" Ibid. (internal quotation marks omitted) (quoting Cesare, 154 N.J. at 402).

As relevant here, the PDVA includes "assault," N.J.S.A. 2C:25-19(a)(3), and "harassment," N.J.S.A. 2C:25-19(a)(13), as a predicate acts. Under N.J.S.A. 2C:12-1(1), "[a] person is guilty of assault if the person: [a]ttempts to cause or purposely, knowingly or recklessly causes bodily injury to another." "Bodily injury is defined as 'physical pain, illness or any impairment of physical condition.'" N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997) (quoting

---

[3] Jurisdiction is not in dispute as the parties have "child[ren] in common" and were in a "dating relationship." N.J.S.A. 2C:25-19(d).

N.J.S.A. 2C:11-1(a)).  To establish bodily injury, "[n]ot much is required."  Ibid.
In N.B., we held a "stinging sensation caused by a slap is adequate to support an
assault," and "[e]ven the slightest physical contact, if done intentionally, is
considered a simple assault under New Jersey law."  Ibid.

Harassment under N.J.S.A. 2C:33-4(b) occurs when:  "[A] person . . . with
purpose to harass another, . . . [s]ubjects another to striking, kicking, shoving,
or other offensive touching, or threatens to do so."  "A finding of a purpose to
harass may be inferred from the evidence presented."  State v. Hoffman, 149
N.J. 564, 577 (1997).   "Common sense and experience may inform that
determination."  Ibid.

"The second inquiry, upon a finding of the commission of a predicate act
of domestic violence, is whether the court should enter a restraining order that
provides protection for the victim."  Silver, 387 N.J. Super. at 126; see also J.D.,
207 N.J. at 475-76 (explaining that an FRO should not be issued without a
finding that relief is "necessary to prevent further abuse" (quoting N.J.S.A.
2C:25-29(b))).  "[T]he Legislature did not intend that the commission of one of
the enumerated predicate acts of domestic violence automatically mandates the
entry of a domestic violence restraining order."  Silver, 387 N.J. Super. at 126-
27.

A-3021-23

"The domestic violence law [i]s intended to address matters of consequence, not ordinary domestic contretemps . . . ." Corrente v. Corrente, 281 N.J. Super. 243, 250 (App. Div. 1995). Moreover, "in the area of domestic violence, as in some other areas in our law, some people may attempt to use the process as a sword rather than as a shield. The judicial system must once again rely on the trial courts as the gatekeeper." Cesare, 154 N.J. at 416 (quoting Hoffman, 154 N.J. at 586).

We conclude the trial court did not abuse its discretion by admitting into evidence plaintiff's video of the school incident. Further, we perceive no error in the trial court's entry of the FRO against defendant.

When plaintiff offered her video into evidence, defendant objected arguing "the entire incident was captured on school video, which [he] requested, . . . [but] ha[d] not yet been provided." Further, defendant stated he "would rather get the entire video, which []captures . . . the entire process [ra]ther than just chosen snapshots, which [plaintiff] wants to present."

In overruling the objection, the court reminded defendant that the trial had been scheduled, and he had not asked for an adjournment because of an evidentiary issue. The court's ruling had nothing to do with the ATRO, because the March 2024 event was always at the heart of the initial TRO. Accordingly,

the court merely observed that defendant had the opportunity to prepare and present his evidence regarding that event by the scheduled trial date. On defendant's failure to do so, the court further noted that he did not request an adjournment prior to the commencement of the hearing to allow for the production of that evidence. Under these circumstances, we are satisfied the court did not abuse its discretion.

Moreover, defendant's reliance on Rule 106 is misplaced. The Rule provides: "If a party introduces all or part of a writing or recorded statement, an adverse party may require the introduction, at that time, of any other part, or any other writing or recorded statement, that in fairness ought to be considered at the same time." N.J.R.E. 106. The Rule is one of completeness. See Alves v. Rosenberg, 400 N.J. Super. 553, 562 (App. Div. 2008). "The object of the [R]ule is to permit the trier of facts to have laid before it all that was said at the same time upon the same subject matter." State v. Gomez, 246 N.J. Super. 209, 217 (App. Div. 1991). In admitting plaintiff's video, the trial court did not violate the Rule. Instead, defendant failed to produce the other video evidence for the court's consideration. Again, we find no abuse of discretion.

We reject defendant's attempt to reduce the March 2024 event to ordinary domestic contretemps. Defendant described the incident as a "physical

struggle," and plaintiff described it as a "scuffle" in which she sustained personal injuries. In finding plaintiff had proved the predicate acts of assault and harassment, the trial court described the incident as "a struggle, tussle, assault, [and] contact between the parties." The court's findings were adequately supported by the evidence in the record. Clearly, the incident surpassed ordinary domestic contretemps.

Further, we reject defendant's assertion that the court allowed plaintiff to use the PDVA as a sword to gain an advantage in the parties' ongoing parenting time dispute. In conducting its gatekeeping role, the court was required to consider "the parties . . . extensive parenting time dispute"; otherwise, the court's analysis would have been incomplete. However, given the parties' extensive domestic violence past, and the events of March 2024, there is no merit to the argument that plaintiff improperly sought the protection of the PDVA.

As to the ultimate merits, we have no reason to disturb the trial court's finding that plaintiff presented more "believable" testimony. Further, in addition to plaintiff's testimony, she offered corroborating evidence. Therefore, the trial court's factual findings were sufficiently supported by credible evidence in the record.

Moreover, the trial court's legal analysis is unassailable. It analyzed its factual findings under both <u>Silver</u> prongs and concluded plaintiff established the predicate acts of harassment and assault and that an FRO was necessary to protect plaintiff from further abuse.

Affirmed.

I hereby certify that the foregoing is a true copy of the original on file in my office.

*M.C. Harley*

Clerk of the Appellate Division

28