# RECORD IMPOUNDED

**NOT FOR PUBLICATION WITHOUT THE**
**APPROVAL OF THE APPELLATE DIVISION**

This opinion shall not "constitute precedent or be binding upon any court." Although it is posted on the internet, this opinion is binding only on the parties in the case and its use in other cases is limited. R. 1:36-3.

SUPERIOR COURT OF NEW JERSEY
APPELLATE DIVISION
DOCKET NO. A-2076-23

K.J.S.,[1]

      Plaintiff-Respondent/
Cross-Appellant,

v.

R.C.H.,

      Defendant-Appellant/
Cross-Respondent.

_____

      Submitted September 30, 2025 – Decided November 17, 2025

      Before Judges Gooden Brown and Torregrossa-O'Connor.

      On appeal from the Superior Court of New Jersey, Chancery Division, Family Part, Morris County, Docket No. FV-14-0198-24.

      Schwartz, Hanna, Olsen & Taus, PC, attorneys for appellant/cross-respondent (Christopher Olsen, of counsel and on the briefs).

---

[1] We use initials to protect the identity of victims of domestic violence and to preserve the confidentiality of these proceedings. R. 1:38-3(d)(10).

Paris P. Eliades Law Firm, LLC, attorneys for respondent/cross-appellant (Paris P. Eliades, of counsel and on the brief; Amy F. Gjelsvik, on the brief).

PER CURIAM

Defendant appeals from a final restraining order (FRO) entered against him in favor of plaintiff, his estranged wife, pursuant to the Prevention of Domestic Violence Act of 1991 (PDVA), N.J.S.A. 2C:25-17 to -35. The FRO is based on the predicate acts of harassment, assault, and contempt of a domestic violence restraining order. Plaintiff cross-appeals from a counsel fee award imposed as compensatory damages pursuant to N.J.S.A. 2C:25-29(b)(4). We affirm the entry of the FRO. We remand the counsel fee award for clarification.

On August 9, 2023, plaintiff obtained a temporary restraining order (TRO), which was later amended on August 15 and October 24, 2023. In the underlying domestic violence complaint that formed the evidential basis for the TRO, plaintiff alleged that after "serv[ing] . . . defendant with divorce papers" on August 8, 2023, at approximately 6:55 p.m. the next day, an argument ensued during which "defendant yelled and threw . . . plaintiff's pills around the kitchen, causing her to flee the residence." As plaintiff left the residence, threatening to call 9-1-1, defendant "chased her" and "threw a cup" that "struck [plaintiff] on the back of her leg."

The complaint also alleged that "defendant ha[d] been throwing out her food and generally harassing her over the past few weeks."  Additionally, according to the complaint, on September 1, 2023, almost a month after the TRO had initially been issued prohibiting all contact, defendant sent plaintiff a text message "asking for forgiveness" and begging her to "[not] turn [him] into the cops [f]or this."

The complaint further recounted an extensive history of domestic violence, beginning "between 1997 and 1998" when defendant in a fit of rage "violently threw [plaintiff] down on the sidewalk."  These angry outbursts allegedly continued throughout the 2000's and involved numerous incidents during which defendant either injured plaintiff or damaged property due to his "inability to control his anger."

The FRO hearing was conducted over three non-consecutive days between October 25 and December 6, 2023.  At the hearing, plaintiff testified that on August 8, 2023, after defendant received a letter from her attorney indicating that she was filing for divorce, defendant left plaintiff several threatening voicemails, including a voicemail warning her not to return to the house because "there's nothing here for you anymore.  No food, no nothing.  You're done.  Okay, you want to play that game, that's fine.  I'm gonna play too."  Another

message stated, "if you know what's good for you, you're going to answer the phone." The voicemail messages were played at the hearing and admitted into evidence. Plaintiff testified the voicemails made her fearful of defendant. She believed that by "mention[ing] the word divorce," she had "crossed the boundary line" and "[t]here [was] no being nice to [her] anymore."

The same night, plaintiff discovered defendant had thrown out food she had left in the refrigerator. She was "sta[r]ving" and "[there was] not a lot of food in the house." The following day, the parties argued and, at some point, defendant threw plaintiff's pills around the room and approached her. As plaintiff ran out of the house and threatened to call the police, defendant threw "his [metal] coffee tumbler," hitting plaintiff on the back of her calf. Plaintiff testified the tumbler "felt like a hockey puck" and described defendant's action as "deliberate[] and full of hate." Plaintiff ran outside towards her neighbor's house screaming and called the police. She testified she "was scared for [her] life." According to plaintiff, defendant eventually left in his truck.

Plaintiff further testified that on September 1, 2023, after she had obtained the TRO, defendant sent her a text message professing his love and begging her "to forgive [him]." The text read in part, "Please do not turn me [into] the cops for this. I'm sorry. Again, I love you."

During her testimony, plaintiff detailed numerous incidents of domestic violence occurring both prior to their marriage in 2006 and during their marriage. Plaintiff testified the incidents were triggered by defendant's "temper tantrums" and "fit[s] of anger." According to plaintiff, over the years, defendant kicked her and "broke [her] pinky" when she raised her hand to block the kick; threw her to the ground; "pulled [her] up by [her] ponytail"; and "slammed on the brakes" while driving, causing her "head [to] hit the windshield." Defendant also "threw" their puppy across the room and frequently threw things, including her textbooks, "a small vacuum cleaner," "a brass chime," dishes, and lamps. Plaintiff testified she wanted a restraining order because she feared defendant and was "absolutely scared for [her] life."

Plaintiff's neighbor testified for plaintiff, corroborating her account. The neighbor testified that at around 7:00 p.m. on August 9, 2023, she "heard a ruckus," observed plaintiff exit her house, and saw "some kind of object . . . flying out" behind her and make a crashing sound when it fell to the ground. The neighbor described the object as "shiny . . . . like a vase." The neighbor said plaintiff screamed and ran towards her (the neighbor's) house. Shortly thereafter, the neighbor saw defendant exit the house "with no shirt on, running

A-2076-23

. . . toward [plaintiff]." On cross-examination, the neighbor acknowledged that the direction defendant was running in was also the direction of his truck.

Defendant testified on his own behalf and produced the responding police officer. The officer's body worn camera, which was played in its entirety at the hearing and admitted into evidence, recorded plaintiff telling the officer that after defendant received divorce papers, he "took [her] pills and threw them," "chased [her] out of the house," and "took [her] food and threw it in the garbage." Plaintiff told the officer she "[did not] have anything to eat" and "[did not] have any money" and asked the officer to arrest defendant. The officer testified that although plaintiff showed him the "metal coffee mug" defendant had thrown, she did not tell him that the cup had hit her. The officer explained to plaintiff that defendant had not committed "an arrestable offense" but informed her that she could go to the police station and "apply for a restraining order."

During his testimony, defendant acknowledged being upset when he received the divorce papers and admitted leaving the taunting voicemails, but denied that his intent in leaving the messages was to convey a threat. Defendant also admitted throwing out plaintiff's food but denied being motivated by vindictiveness. Instead, he explained that he discarded the food because "something smelled in the refrigerator." Defendant further admitted "[throwing]

A-2076-23

6

the bottle" with plaintiff's pills "on the ground" but explained that "the lid was open and [the pills] ended up all over the floor." Defendant said at that point, plaintiff threatened to call 9-1-1 and "as [he] took a . . . couple steps towards her, she ran out the door," "[s]creaming and yelling." He admitted "follow[ing] her outside" and "throw[ing] the cup" but denied that the cup hit her. Instead, the cup "hit the door[,] . . . bounced off[,] and went outside." Defendant acknowledged that "by then[, he] was very mad" but denied trying to hit her with the cup and explained that "she was already out the door." According to defendant, at that point, "to diffuse the whole situation, [he] just got in [his] truck and . . . left."

Regarding the September 1, 2023 text message, defendant admitted sending it knowing that he was violating the TRO and would be arrested if plaintiff contacted the police. Defendant denied all allegations of prior domestic violence incidents, admitting only to accidentally breaking plaintiff's finger during friendly horseplay. Defendant acknowledged being the sole wage earner in the marriage at that time and that plaintiff was completely financially dependent on him but denied using his financial control as a weapon when he was angry at her.

A-2076-23

Following the hearing, on December 15, 2023, the judge entered an FRO against defendant based on the predicate acts of assault, harassment, and contempt of a restraining order. In an oral decision, the judge considered the evidence of the predicate acts as well as "the evidence of the prior acts of domestic violence between the parties" and determined plaintiff established by a preponderance of the evidence both "prongs" of the two-pronged test enunciated in Silver v. Silver, 387 N.J. Super. 112 (App. Div. 2006).

In assessing credibility, the judge found plaintiff's testimony "credible" based on her "demeanor." According to the judge, "throughout the proceedings," plaintiff was "calm and candid," "acknowledge[d] mistakes," and "did not unnecessarily embellish or overstate her testimony." Likewise, the judge found plaintiff's neighbor's testimony as well as the responding police officer's testimony "credible." On the other hand, the judge determined defendant's testimony was not credible. According to the judge, defendant's testimony was "somewhat inconsistent" in certain respects and "was motivated by his interest in the outcome of the case." Based on these assessments, the judge made factual findings in accordance with the credible testimony.

Turning to the predicate acts, the judge determined defendant committed an assault by "throw[ing] the coffee tumbler at . . . [p]laintiff." Critically, the

judge pointed out that defendant "admitted to throwing the tumbler." Crediting plaintiff's testimony that the tumbler hit her leg, the judge found plaintiff established defendant "purposely or knowingly thr[e]w th[e] tumbler at . . . [her], and did so with the intent to cause, and in fact . . . did cause bodily injury" in that plaintiff testified that although "she did[ not] go to the hospital for it," "it did hurt" and "she experienced pain."

As to harassment, the judge credited plaintiff's testimony that "the parties had experienced . . . escalating tensions in the days leading up to the incident." The judge recounted "[p]laintiff had retained a divorce attorney" and "defendant admitted that the receipt of th[e] letter from counsel . . . upset him." According to the judge, after receiving the letter, defendant left plaintiff voicemails, "threatening to withhold basic necessities from . . . [p]laintiff." The judge noted that despite defendant's attempt "to explain th[em] away," he admitted that the voicemails "could be considered a threat." Further, the judge found defendant's nefarious purpose in leaving the voicemails was evidenced by the fact that plaintiff's food was admittedly thrown out by defendant. The judge concluded "the testimony concerning the [voicemail] threats . . . satisf[ied] the elements of harassment" in that the communications "were made in an attempt to harass and to bother . . . [p]laintiff."

9

Regarding the predicate act of contempt, the judge found it was established by virtue of defendant's admission that he sent the text message "after the [TRO] had been served." The judge pointed out "that the content of the message itself acknowledged that . . . [d]efendant was aware that the message should not have been sent . . . in . . . [d]efendant's own words."

Next, the judge considered whether a restraining order was "need[ed] . . . to protect . . . [p]laintiff . . . from immediate danger." The judge acknowledged that the August 9, 2023 assault was not a particularly "violent act" based on the nature of the injury. However, the judge considered plaintiff's detailed testimony regarding "prior acts of domestic violence between the parties." The judge recounted "eleven incidents" beginning in 1997 "all the way up to 2023." Based on the predicate acts as well as the previous incidents, the judge concluded an FRO was needed to protect plaintiff's "health, safety[,] and welfare" from "immediate danger." The judge also granted plaintiff's attorney's request for counsel fees subject to the submission of a certification of services and an evaluation of the reasonableness of the fees.

Thereafter, plaintiff's attorney submitted a certification of services to support his application for $16,240 in counsel fees. Defendant objected to entries related to support issues totaling 13.7 hours, arguing those issues should

A-2076-23

be addressed in the divorce proceeding. On January 29, 2024, the judge awarded plaintiff $13,520 for counsel fees incurred obtaining the FRO.

In an accompanying statement of reasons, the judge considered whether the fees were incurred as a direct result of domestic violence pursuant to N.J.S.A. 2C:25-29(b)(4), and the reasonableness of the fees in accordance with Rule 4:42-9(b), incorporating the factors in RPC 1.5. The judge concluded the fees were incurred as a direct "result of defendant's domestic violence." However, the judge reduced the amount requested by plaintiff's attorney, reasoning that certain billing entries were excessive. The judge reduced plaintiff's attorney's billings by 6.8 hours, at an hourly rate of $400.

The judge also rejected defendant's objection to the fees billed, reasoning "the record reflect[ed] . . . [d]efendant's financial abuse of [p]laintiff as a method of exerting control over [p]laintiff." The judge further explained:

> Although [p]laintiff's counsel here was retained for the matrimonial filing before the issuance of the restraining order, the application for fees submitted does not include any billables relating to work completed prior to the restraining order. The [c]ourt finds that the billable work set forth was incurred as a direct result of the domestic violence and as such, awards fees for those entries, as contemplated by the statute.

On March 14, 2024, defendant filed a notice of appeal, and, on March 26, 2024, plaintiff filed a notice of cross-appeal. On April 15, 2024, the judge

submitted an amplification of reasons as permitted by <u>Rule</u> 2:5-1(d). In the written statement, the judge amplified her reasons for finding plaintiff satisfied <u>Silver</u>, and addressed plaintiff's cross-appeal on the issue of counsel fees. These appeals followed.

On appeal, defendant argues the judge erred in finding his voicemails met "the statutory requirements for harassment under N.J.S.A. 2C:33-4" because plaintiff failed to establish the requisite "intent to harass." Defendant further asserts the judge's finding of the predicate act of simple assault is "not supported 'by adequate substantial and credible evidence'" because, in assessing plaintiff's credibility, the judge failed to consider that plaintiff did not "mention[] being hit by the metal coffee cup to the responding officer."

"Our review of a Family Part judge's findings following a bench trial is a narrow one." <u>N.T.B. v. D.D.B.</u>, 442 N.J. Super. 205, 215 (App. Div. 2015) (quoting <u>Cesare v. Cesare</u>, 154 N.J. 394, 411 (1998)). "[W]e grant substantial deference to the trial court's findings of fact and the legal conclusions based upon those findings." <u>Ibid.</u> (quoting <u>D.N. v. K.M.</u>, 429 N.J. Super. 592, 596 (App. Div. 2013)). "We defer to the credibility determinations made by the trial court because the trial judge 'hears the case, sees and observes the witnesses, and hears them testify,' affording it 'a better perspective than a reviewing court

in evaluating the veracity of a witness.'" Gnall v. Gnall, 222 N.J. 414, 428 (2015) (quoting Cesare, 154 N.J. at 412). We also defer to family court factfinding because of "the family courts' special jurisdiction and expertise in family matters." Cesare, 154 N.J. at 413.

Therefore, we will not "disturb the 'factual findings and legal conclusions of the trial judge unless [we are] convinced that they are so manifestly unsupported by or inconsistent with the competent, relevant[,] and reasonably credible evidence as to offend the interests of justice.'" Id. at 412 (quoting Rova Farms Resort, Inc. v. Investors Ins. Co. of Am., 65 N.J. 474, 484 (1974)). "On the other hand, where our review addresses questions of law, a 'trial judge's findings are not entitled to that same degree of deference if they are based upon a misunderstanding of the applicable legal principles.'" N.T.B., 442 N.J. Super. at 215-16 (quoting N.J. Div. of Youth & Fam. Servs. v. Z.P.R., 351 N.J. Super. 427, 434 (App. Div. 2002)).

In J.D. v. A.M.W., 475 N.J. Super. 306 (App. Div. 2023), we recited the well-settled analytic framework for evaluating domestic violence cases:

> In adjudicating a domestic violence case, the trial judge has a "two-fold" task. Silver, 387 N.J. Super. at 125. The judge must first determine whether the plaintiff has proven, by a preponderance of the evidence, that the defendant committed one of the predicate acts referenced in N.J.S.A. 2C:25-19(a). If a predicate

offense is proven, the judge must then assess "whether a restraining order is necessary, upon an evaluation of the [factors] set forth in N.J.S.A. 2C:25-29[(a)](1) to -29[(a)](6), to protect the victim from an immediate danger or to prevent further abuse." J.D. v. M.D.F., 207 N.J. 458, 475-76 (2011) (quoting Silver, 387 N.J. Super. at 126-27). The factors which the court should consider include, but are not limited to:

> (1) The previous history of domestic violence between the plaintiff and defendant, including threats, harassment[,] and physical abuse;
>
> (2) The existence of immediate danger to person or property;
>
> (3) The financial circumstances of the plaintiff and defendant;
>
> (4) The best interests of the victim and any child;
>
> (5) In determining custody and parenting time the protection of the victim's safety; and
>
> (6) The existence of a verifiable order of protection from another jurisdiction.
>
> [N.J.S.A. 2C:25-29(a).]

[J.D., 475 N.J. Super. at 313-14 (fourth alteration added) (citations reformatted).]

Here, defendant only challenges the judge's finding that he committed the predicate acts of harassment, N.J.S.A. 2C:33-4, and assault, N.J.S.A. 2C:12-1.

Defendant does not challenge the judge's finding that he committed the predicate act of contempt of a domestic violence order, N.J.S.A. 2C:29-9(b),[2] nor does he challenge the judge's finding of Silver's second prong. A failure to advance an argument effectively waives that argument on appeal. See N.J. Dep't of Env't Prot. v. Alloway Twp., 438 N.J. Super. 501, 505 n.2 (App. Div. 2015) (citing Fantis Foods v. N. River Ins. Co., 332 N.J. Super. 250, 266-67 (App. Div. 2000)) ("An issue that is not briefed is deemed waived upon appeal."). Therefore, even if we accepted defendant's arguments that a finding of harassment and assault was not supported by the record, the FRO is nonetheless sustainable based on the judge finding the predicate act of contempt, which defendant conceded, and the second Silver prong, which is not challenged on appeal and therefore waived.[3]

_____

[2] Pursuant to N.J.S.A. 2C:29-9(b)(2), "a person is guilty of a disorderly persons offense if that person purposely or knowingly violates an order entered under the provisions of the [PDVA]."

[3] Even if we considered defendant's argument that assault and harassment were not supported by the record, we would reject the argument as unavailing. See, e.g., D.M.R. v. M.K.G., 467 N.J. Super. 308, 323-24 (App. Div. 2021) (refusing to "disturb the trial judge's finding that the defendant committed the predicate act of harassment" when the trial judge found that "there was minimal but sufficient evidence" supporting a finding that defendant intended to harass based on context); Pazienza v. Camarata, 381 N.J. Super. 173, 183-84 (App. Div. 2005) (explaining text messages sent from the defendant to the plaintiff "when

Turning to the cross-appeal, plaintiff argues the matter should be remanded for the judge to consider her attorney's revised certification of services "correct[ing] a clerical error in the previously submitted [c]ertification."

"N.J.S.A. 2C:25-29[(b)](4) expressly includes 'reasonable attorney's fees' as compensatory damages." McGowan v. O'Rourke, 391 N.J. Super. 502, 507 (App. Div. 2007) (quoting Schmidt v. Schmidt, 262 N.J. Super. 451, 454 (Ch. Div. 1992)). "[B]ecause th[e] statute sets forth attorney's fees as compensatory damages, '[such] fees are not subject to the traditional analysis . . . .'" Ibid. (quoting Schmidt, 262 N.J. Super. at 454). Instead, "to be entitled to fees, '[t]he fees must be a direct result of the domestic violence; they must be reasonable; and pursuant to R. 4:42-9(b), they must be presented by affidavit.'" Ibid. (alteration in original) (quoting Schmidt, 262 N.J. Super. at 454).

---

viewed in the context of [the] defendant's prior conduct towards [the] plaintiff, [were] likely to cause [the] plaintiff annoyance," and the "purpose to harass on [the] defendant's part [was] easily inferred, using '[c]ommon sense and experience'" (quoting State v. Hoffman, 149 N.J. 564, 577 (1997)) (alteration in original)); N.B. v. T.B., 297 N.J. Super. 35, 43 (App. Div. 1997) (affirming the trial judge's findings that an act of domestic violence was committed when "the competent, relevant[,] and reasonably credible evidence supports a conclusion that . . . [the perpetrator] attempted to cause or purposely, knowingly[,] or recklessly caused bodily injury to . . . [the victim]" under N.J.S.A. 2C:12-1(a)(1)).

Rule 4:42-9(b) "incorporates the factors stated in [RPC] 1.5." Id. at 508. "If, after considering those factors, the court finds that the domestic violence victim's attorney's fees are reasonable, and they are incurred as a direct result of domestic violence, then a court, in an exercise of its discretion, may award those fees." Ibid. We review an award of fees in a domestic violence case for abuse of discretion and will disturb an award "only on the rarest of occasions, and then only because of a clear abuse of discretion." Packard-Bamberger & Co. v. Collier, 167 N.J. 427, 444 (2001) (quoting Rendine v. Pantzer, 141 N.J. 292, 317 (1995)).

At the outset, like the judge, we reject defendant's argument that "support-related" fees included in plaintiff's attorney's certification were not "contemplated under N.J.S.A. 2C:25-29(b)(4)" and "should have been addressed in the divorce proceedings." We discern no error in the judge's finding that the support-related fees were intertwined with the domestic violence action and a "direct result of the domestic violence" because allegations of domestic violence involved "[d]efendant's financial abuse of [p]laintiff as a method of exerting control" and the issue was the "subject of lengthy cross-examination."

In her cross-appeal, plaintiff does not challenge the counsel fee award based on the judge's evaluation of the original certification of services and we

A-2076-23

discern no error in that evaluation. Plaintiff seeks a remand solely for consideration of her "corrected bill." In a January 19, 2024 letter to the judge, plaintiff's attorney submitted a "corrected bill" revising the time expended on the domestic violence matter and increasing the amount requested to $17,320. In the letter, counsel explained that when deleting inappropriate entries, their "billing program [unexpectedly] shift[ed] the narrative related to the time entry to a different time." As a result, counsel inadvertently underbilled for the services related to the domestic violence matter.

In the judge's amplification of reasons, the judge addressed plaintiff's cross-appeal on the counsel fee award as follows:

> [P]laintiff has . . . filed a cross-appeal on the issue of counsel fees, in that a revised statement of counsel fees incurred by plaintiff was not considered by the [c]ourt when the [o]rder was entered. The revised statement was not considered. A revised statement was filed, albeit under the incorrect docket. . . . Counsel for plaintiff did send by e-mail a courtesy copy to chambers staff; however, that email was never forwarded or brought to the attention of this [c]ourt, which learned of the revised statement of counsel fees only at the time of the [n]otice of [a]ppeal. In what was seemingly the result of administrative error, this [c]ourt was without the information contained in the revised statement of counsel fees to consider the full amount incurred by plaintiff.

The judge did not amend the order awarding counsel fees.

A-2076-23

The judge's amplification appears ambiguous. It is unclear whether the judge declined to amend the original award considering the revised bill, declined to consider the revised bill while maintaining that the original award was reasonable, or was simply informing us of her reasons for the prior award. We also acknowledge that the judge may have declined to consider the revised bill because "[e]xcept for certain limited proceedings not here involved, the filing of a notice of appeal divests the trial court of jurisdiction." State v. Schneider, 156 N.J. Super. 53, 56 (App. Div. 1978); see also R. 2:9-1(a) ("The supervision and control of the proceedings on appeal . . . shall be in the appellate court from the time the appeal is taken or the notice of petition for certification filed."). Accordingly, we remand for clarification of the judge's amplification, noting the judge is free to consider the revised bill within her discretion.

We affirm the December 15, 2023 FRO. We remand the January 29, 2024 order awarding plaintiff counsel fees for further proceedings consistent with this opinion. We do not retain jurisdiction.

I hereby certify that the foregoing is a true copy of the original on file in my office.

M.C. Harley

Clerk of the Appellate Division

A-2076-23

19